JOSÉ LANZÓ LLANOS, demandante y recurrente, *v.* BANCO DE LA VIVIENDA DE PUERTO RICO y M.T. INVESTMENTS, demandados y recurridos.

*Número:* RE-91-602       *Resuelto:* 1ro de junio de 1993

*Víctor M. Rivera Torres,* de *Rivera Colón & Rivera,* abogado de los recurrentes; *José A. Santiago Torres* y *Alodia Bauzá de Huertas,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

I

El 8 de enero de 1965, la Sra. Petrona Calderón otorgó un pagaré por la suma de tres mil ochocientos dólares

($3,800) a favor del Banco de la Vivienda de Puerto Rico, o a su orden, para ser pagados en plazos mensuales de veintiseis dólares con catorce centavos ($26.14), a partir de 1ro de junio de 1965. Este pagaré fue garantizado con una hipoteca que gravó la propiedad objeto de la presente controversia.

Como resultado del incumplimiento de la Sra. Petrona Calderón con los pagos referidos, el 2 de agosto de 1982 el Banco de la Vivienda presentó una demanda para ejecución de hipoteca por la vía ordinaria. Una vez expedido el emplazamiento correspondiente —y con el propósito de diligenciarlo— el emplazador Mario López visitó la residencia de la señora Calderón. En esa ocasión, uno (1) de los tres (3) hijos de la demandada, llamado Justo Lanzó, le informó que su madre había fallecido hacía diez (10) años y que desconocía la dirección de sus otros dos (2) hermanos.[1]

Sobre las diligencias llevadas a cabo para emplazar a la parte demandada, el señor López declaró, en lo pertinente, lo siguiente:[2]

4. Que *el día 22 de septiembre de 1982, a las 6:30 p.m.* me personé a la última dirección conocida de la parte demandada en Solar J-8, Eduardo J. Saldaña, Carolina, P.R., no encontrando allí a Petrona Calder[ó]n.

5. Que este mismo día y en el mismo lugar, pude comunicarme con el señor Justo Lanz[ó], quien dijo ser hijo de la co-demandada Petrona Calder[ó]n, y éste me informó además, que hace diez años que dicha co-demandada falleció y le sobreviven sus hijos Ramón Lanz[ó] y Pepe Lanz[ó], pero que desconocía la dirección de éstos.

6. Que *el día 22 de septiembre, a las 3:45 p.m.* me personé a la Escuela Elemental José Severo Quiñones localizada en Calle Ulises Ortiz, Carolina, P.R., que es la más cercana a la última dirección conocida de la parte demandada y allí me informaron

---

[1] La señora Calderón falleció dejando como sus únicos herederos a sus hijos: Justo, Ramón y José Lanzó. Con posterioridad al fallecimiento de la señora Calderón, permaneció residiendo en la propiedad el Sr. Justo Lanzó.

[2] Citamos de la declaración jurada prestada el 20 de octubre de 1982, págs. 1–2, por el Sr. Mario López que obra en autos.

que no conocían a *la referida parte demandada*, que desconocían su paradero y que al acudir a los expedientes no habían hijos de ésta estudiando en ese plantel.

7. Que *el día 22 de septiembre de 1982, a las 3:31 p.m.*, me personé en el Cuartel de la Policía de Carolina, P.R., que es el más cercano a la última dirección conocida de la parte demandada y allí el señor Ayuso, placa [Núm.] 64615, me informó que desconocía el paradero *de la parte demandada de epígrafe* y que al buscar en sus registros no había nada sobre los mismos.

8. Que el día 27 de septiembre de 1982, a las 9:44 a.m., me personé a la estación de correos de Carolina, P.R., que es la más cercana a la última dirección conocida de la parte demandada y allí me comuniqué con el señor Roque quien me informó que no aparece cambio de dirección alguno sobre la parte demandada.

9. Que por todo lo aquí expuesto me ha sido totalmente imposible conseguir a la parte demandada en el caso de epígrafe para poderles servir el emplazamiento respectivo habiendo ya agotado todos los medios de conseguir su paradero. (Énfasis suplido.)

Con posterioridad a estas diligencias, la parte demandante enmendó su demanda para añadir a los recurrentes y al Sr. Justo Lanzó como demandados en calidad de herederos de Doña Petrona Calderón y, a base de la referida declaración jurada, el tribunal autorizó el emplazamiento de los recurrentes mediante la publicación de edictos al amparo de la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, recayendo luego sentencia en rebeldía en contra de estos tres (3) demandados. La venta judicial del inmueble hipotecado tuvo lugar el 5 de agosto de 1987, adjudicándose la buena pro al licitador M.T. Investment, quien tiene al presente la posesión de la propiedad.

El 25 de febrero de 1991 la parte que recurre ante nos presentó una demanda ante el Tribunal Superior, Sala de Carolina, en la cual solicitó que se declarara la nulidad de la sentencia dictada en el caso Civil Núm. FCD 82-2289(A), sobre la ejecución de hipoteca por la vía ordinaria. Como fundamento de nulidad, se adujo el hecho de que nunca se adquirió jurisdicción sobre los recurrentes, porque la declaración jurada del emplazador era insuficiente para el fin de autorizar el emplazamiento de éstos mediante edicto, de-

bido a que ésta sólo reflejaba meras generalidades sobre las diligencias llevadas a cabo para emplazarlos. Desestimada sumariamente la demanda por el tribunal de instancia, los recurrentes plantearon ante nos la comisión del siguiente error por parte del tribunal:

> Erró el Tribunal Superior de Puerto Rico, Sala de Carolina[,] en resolver que el Tribunal había adquirido jurisdicción de la parte aquí demandante-recurrente en el caso anterior sobre ejecución de hipoteca, civil número 82–2289. Solicitud de revisión, pág. 5.

Vista la petición de revisión presentada, este Tribunal concedió a la parte recurrida un término para que mostrara "causa por la cual no deb[e] revocarse la sentencia de la cual se recurre por no cumplir la declaración jurada presentada en apoyo de la moción para emplazar por edictos en el caso Civil. Núm. 82-2289(A) con los requisitos dispuestos en este Tribunal en *Mundo v. Fúster*, 87 D.P.R. 363 (1983)". Resolución, pág. 1. Habiendo comparecido la parte recurrida, nos encontramos en posición de resolver y lo hacemos según lo intimado.

## II

En su comparecencia, la parte recurrida sostiene que las gestiones realizadas en este caso por el emplazador, según acreditadas en su declaración jurada, cumplen cabalmente con los requisitos jurisprudenciales para que un tribunal permita el emplazamiento mediante edictos. No tiene razón; veamos por qué.

La Regla 4.5 de Procedimiento Civil de 1979, *supra*, enumera las circunstancias en las cuales una persona puede ser emplazada mediante la publicación de edictos y la forma en que dicha publicación deberá llevarse a cabo. La mencionada regla establece, en lo pertinente:

> Cuando la persona a ser emplazada estuviere fuera de Puerto Rico, o *estando en Puerto Rico, no pudiere ser localizada des-*

*pués de realizadas las diligencias pertinentes*, o se ocultare para no ser emplazada, o si fuere una corporación extranjera sin agente residente, y *así se comprobare a satisfacción del tribunal mediante declaración jurada, con expresión de dichas diligencias*, y apareciere también de dicha declaración, o de la demanda jurada presentada, que existe una reclamación que justifique la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, el tribunal podrá dictar una orden disponiendo que el emplazamiento se haga por un edicto. No se requerirá un diligenciamiento negativo como condición para dictar la orden disponiendo que el emplazamiento se haga por edicto. (Énfasis suplido.) Regla 4.5 de Procedimiento Civil, *supra*.

■ El propósito de las reglas que regulan el emplazamiento mediante edictos es brindar al demandado una óptima garantía de su derecho a ser oído. *Mundo v. Fúster*, 87 D.P.R. 363 (1963). Por lo tanto, la citación o emplazamiento es el paso inaugural del debido proceso de ley que permite el ejercicio de jurisdicción por el tribunal para adjudicar derechos del demandado. Su adulteración es una flagrante violación del trato justo. *Pagán v. Rivera Burgos*, 113 D.P.R. 750, 753–754 (1983). Por consiguiente, una notificación indebida, a la persona contra la cual se ha instado una acción judicial, produce la nulidad de la sentencia dictada por falta de jurisdicción sobre el demandado debido a que "el concepto de jurisdicción *in personam* está inextricablemente atado al debido proceso de ley". *Reyes v. Oriental Fed. Savs. Bank*, 133 D.P.R. 15, 21 (1993).

■ Como parte de los objetivos del debido proceso de ley, los requisitos impuestos por la Regla 4.5 de Procedimiento Civil, *supra*, para el emplazamiento mediante edictos persiguen también evitar el fraude. Por eso es que siempre hemos exigido el más estricto cumplimiento con tales requisitos. Véanse: *Chase Manhattan Bank v. Polanco Martínez*, 131 D.P.R. 530 (1992); *Rodríguez v. Nasrallah*, 118 D.P.R. 93 (1986); *Mundo v. Fúster*, supra. Véase, además, R. Taylor, *An Easy Case Makes Bad Law —Burn-*

*ham v. Superior Court of California*, 66 Wash. L. Rev. 623, 625 (1991).

■      Aunque el emplazamiento personal resulta siempre el más apropiado e ideal para la presentación de una acción judicial, hay ciertas circunstancias en las cuales se reconoce que es imposible notificar personalmente una reclamación —véase Regla 4.5 de Procedimiento Civil, *supra*— por lo cual es forzoso recurrir al emplazamiento mediante la publicación de edictos.

■      Con el fin de poder llevar a cabo un emplazamiento mediante edictos, es necesario que la parte interesada acredite al tribunal el hecho de que ha sido diligente al tratar de localizar a la parte demandada para lograr el emplazamiento personal y que, a pesar de las diligencias realizadas, no le ha sido posible localizarla. A tales efectos, y a los fines de que el tribunal se encuentre en posición de determinar que realmente se llevaron a cabo dichas diligencias, el emplazador deberá prestar una declaración jurada en la cual detalle las gestiones realizadas por él para localizar a la parte demandada. Sólo cuando se demuestre de forma fehaciente que se han llevado a cabo aquellas diligencias potencialmente efectivas con el fin de encontrar al demandado, puede el tribunal conceder el permiso para emplazarlo mediante la mencionada publicación.

Sobre las diligencias que deben realizarse y acreditarse por el emplazador en la mencionada declaración jurada, este Tribunal expresó en el caso *Mundo v. Fúster*, supra, págs. 371–372, lo siguiente:

> La declaración jurada que a ese efecto se preste debe contener *hechos específicos demostrativos de esa diligencia y no meras generalidades* que no son otra cosa que prueba de referencia. En los casos que hemos estudiado aparecen específicamente las gestiones hechas con expresión de las personas con quienes se investigó y la dirección de éstas (citas omitidas). *Hacerlo constar es de incalculable valor para evitar el fraude.* Es buena práctica inquirir de *las autoridades de la comunidad, la policía, el alcalde, del administrador de correos que son las*

*personas más llamadas a conocer la residencia o el paradero de las personas que viven en la comunidad* .... Demostrar que se han hecho todas esas diligencias es la única forma en que puede establecérsele satisfactoriamente al juez la imposibilidad de notificar personalmente al demandado. (Énfasis suplido.)

Las diligencias que describimos específicamente en *Mundo v. Fúster*, supra, constituyen meros ejemplos de lo que sería una buena práctica al intentar encontrar al demandado con el propósito de notificarle acerca de la acción instada en su contra. No obstante, éstas no constituyen una enumeración cerrada de posibilidades ni puede permitirse que se conviertan en fundamento para la recitación automática de alegaciones evidentemente estereotipadas con el fin de obtener, sin más, la autorización para emplazar mediante edictos, con total abstracción de las circunstancias particulares del caso tratado. Los avances tecnológicos en el campo de las comunicaciones, los cambios demográficos habidos en Puerto Rico, la movilidad de nuestros conciudadanos hacia los grandes centros urbanos, los cambios en los patrones culturales de nuestro pueblo y otra serie de factores que han alterado nuestra forma de vida desde que resolvimos *Mundo v. Fúster*, supra, hace treinta (30) años, nos obligan a reformular la norma allí expuesta.

■  Ratificamos, una vez más, que para que proceda una orden de citación mediante por edictos, la declaración jurada que le sirve de base tiene que demostrar que el demandante ha realizado gestiones encaminadas en forma eficaz para tratar de localizar al demandado y emplazarlo personalmente, y que a pesar de esa diligencia ha sido imposible localizarlo, debiendo establecer los hechos específicos que demuestren tal diligencia. Sin embargo, la determinación que ha de ser hecha por el tribunal respecto a si el demandante fue o no diligente en su gestión *deberá responder a los hechos particulares del caso*. En este contexto, entendemos que en ciertas situaciones resulta totalmente superfluo acudir a la escuela más cercana a la última resi-

dencia conocida de un demandado cuando ésta se encuentra a considerable distancia de su residencia. Muy poca utilidad puede tener el dirigirse a la alcaldía de un municipio en donde habitan más de cien mil (100,000) personas, como resulta ser el municipio de *Carolina*, dentro del cual estaba ubicada la última residencia conocida de la causante de los demandados. Por el mismo motivo, en muchas ocasiones es de esperarse que nada se obtenga con acudir al correo más cercano a esa residencia. Por lo tanto, la razonabilidad de las gestiones efectuadas dependerá de las circunstancias particulares de cada caso. La suficiencia de tales diligencias se medirá teniendo en cuenta todos los recursos razonablemente accesibles al demandante para intentar localizar al demandado. Para hacer tal determinación, el tribunal deberá examinar si, a la luz de las circunstancias del caso, las diligencias practicadas con el fin de notificar personalmente al demandado agotaron toda posibilidad razonable disponible al demandante para poder localizarlo.

## III

A los fines de que el tribunal pueda hacer esta determinación, es necesario que la parte que promueve el emplazamiento mediante edictos coloque al tribunal en posición de así hacerlo. Meras generalidades son insuficientes. La declaración jurada que sirve de base a tal notificación tiene que establecer las diligencias realizadas en forma tan precisa y detallada como sea necesario para que el tribunal pueda entender, medir y aquilatar la suficiencia de tales gestiones a la luz de las circunstancias de cada caso en particular.

Veamos si en este caso se demostró que las gestiones llevadas a cabo por el emplazador, Sr. Mario López, según expuestas en la declaración jurada que prestara para noti-

ficar personalmente a los recurrentes fueron adecuadas a la luz de las circunstancias específicas aquí presentes.

Surge de la declaración jurada, en primer lugar, el hecho de que el señor López visitó la residencia de la señora Calderón el 22 de septiembre de 1982, *a las 6:30 P.M.*, con el propósito de emplazarla.(³) Nos sorprende el hecho de que, antes de presentarse a dicha residencia y de saber que la señora Calderón había fallecido, se haya dirigido, *ese mismo día a las 3:45 P.M.*, a la Escuela Elemental José Severo Quiñones con el propósito de inquirir sobre su paradero y de investigar en los expedientes si había algún hijo de la demandada estudiando en ese plantel; más aún sorprende el hecho de que antes de esta diligencia, *a las 3:31 P.M.*, acudió al Cuartel de la Policía "más cercano" con el propósito de obtener alguna información sobre "la parte demandada de epígrafe".(⁴) Resulta difícil de creer que el señor López se hubiera dirigido a dicha escuela y al referido cuartel tres (3) horas antes de presentarse a la residencia de la parte demandada. Tal circunstancia debió de haber alertado al tribunal con el fines de ser más riguroso en la evaluación de dicha declaración antes de autorizar el emplazamiento mediante edictos impugnado en este caso.

Evaluada con tal rigurosidad dicha declaración podemos percatarnos de que el señor López la prestó *con anterioridad a que se enmendara la demanda a los efectos de incluir como parte demandada a los herederos de la Sra. Petrona Calderón.* Por tal razón, cuando en su declaración el señor López se refería a "la parte demandada de epígrafe", obviamente se trataba de la señora Calderón y no de sus hijos, los demandantes recurrentes. En ningún momento se acreditó al tribunal, antes de que éste concediera el permiso para emplazar mediante edictos, diligencia alguna para notificar personalmente a los Sres. Ramón y José Lanzó Llanos, los cuales fueron incluidos como de-

---

(³) Véase apartado 4to de la Declaración Jurada del señor López.

(⁴) Véase el apartado 7mo de la Declaración Jurada.

mandados mediante enmienda hecha *con posterioridad* a la fecha en que se llevaron a cabo las supuestas gestiones descritas en la mencionada declaración jurada.

Por otro lado, asumiendo que la mencionada declaración pudiera entenderse como extensiva a los recurrentes, el examen de ésta demuestra que uno (1) de los hijos de Doña Petrona residía en la vivienda que constituyó la última residencia de ésta. Aparte de preguntar a éste sobre el paradero de sus hermanos —los recurrentes— ninguna otra gestión fue realizada por la parte demandante para obtener esa dirección de los demás residentes de esta vivienda. La evidencia en autos demuestra que a la fecha en que el emplazador realizó las diligencias descritas en su declaración, el Sr. Justo Lanzó vivía en dicha residencia en unión a su esposa y tres (3) hijos quienes presuntamente eran mayores de edad. La declaración jurada prestada por el emplazador en este caso omitió informar este detalle y la razón por la cual no se les preguntó a estas personas sobre el paradero de los recurrentes.

Igualmente, se omitió explicar en la declaración las razones por las cuales no se trató de obtener tal información de los vecinos del lugar donde ubicaba dicha residencia. Los autos de este caso demuestran que entre Doña Petrona y sus hijos ocuparon la mencionada vivienda por más de treinta (30) años, por lo que es lógico suponer la probabilidad de que algún vecino tuviera conocimiento de la dirección de los recurrentes.[5]

Evidentemente, una sola lectura a la declaración jurada prestada por el Sr. Mario López nos convence de que esta adolece de la vaguedad y ambigüedad que hemos censurado en el pasado. En ella se menciona el hecho de que el

---

[5] Una simple referencia a la guía telefónica residencial de ese año hubiera podido ser suficiente para localizar al codemandado Ramón Lanzó Llanos, cuyo nombre aparece en la Guía Telefónica Residencial —Area Metropolitana— de 1982, pág. 365, año en el que alegadamente se realizaron las gestiones para localizar a los recurrentes con el fin de notificarles personalmente de la demanda. Ninguna razón se alega para justificar la omisión de tan obvia diligencia.

declarante visitó determinada escuela ubicada en la dirección que se indica en esta declaración con el propósito de inquirir si allí conocían a Doña Petrona o si existían hijos de ésta estudiando en ese plantel. Sin embargo, no se menciona el nombre de la persona con quien se habló allí; tampoco se indica la distancia de la escuela a la casa de Doña Petrona y mucho menos se expresan las circunstancias por las cuales tal gestión podía ser de alguna utilidad a la luz de la concurrencia de otras circunstancias de las cuales se podía razonablemente anticipar que tal gestión habría de resultar totalmente inútil, en vista de que Doña Petrona hacía diez (10) años que había fallecido; que se conocía la dirección en que ésta residía al momento de su fallecimiento; que se conocía el nombre de sus hijos (los demandados) y que se conocía la dirección de uno de ellos así como la de los familiares inmediatos de éste. Igual razonamiento aplica a las gestiones de acudir al Cuartel de la Policía de Carolina y su estación de correos. En un municipio de más de cien mil (100,000) habitantes, ¿qué resultado podía esperarse de dichas gestiones? ¿Cómo es posible anticipar que conocieran a los demandados en los referidos lugares? La lógica nos indica que era más razonable indagar sobre el paradero de los recurrentes entre los vecinos aledaños a la vivienda de Doña Petrona que en el referido cuartel o en el correo mencionado.

Por último, al conocerse el nombre y la dirección del hermano de los recurrentes, quien también era parte demandada en el caso, bien pudo la parte demandante citar a éste y a sus familiares inmediatos que con él convivían, a los fines de inquirir de éstos —mediante deposición al efecto— acerca del paradero o la dirección de aquéllos. No es lo mismo que un desconocido le pregunte a una persona, rodeada ésta de la seguridad y confianza que le brinda el ambiente de su hogar, sobre el paradero de un familiar cercano sin que se le explique el propósito de la pregunta, o habiéndosele explicado se abstenga, a base de una mal en-

tendida lealtad, de divulgar su dirección, que el examen formal, *bajo juramento*, ante un notario público conducido por un abogado en su oficina o en el salón de sesiones de un tribunal, acompañado dicho acto de las demás formalidades que éste conlleva. Ninguna explicación se le ofreció al tribunal que ordenó el emplazamiento mediante edicto de los recurrentes para justificar el que no se haya recurrido a este eficaz mecanismo de descubrimiento con el propósito antes señalado.

Vemos, pues, cómo en la declaración jurada presentada en apoyo de la autorización concedida para el emplazamiento mediante edicto de los recurrentes se excluyó justificar la omisión de otras diligencias, sencillas y eficaces, que estaban disponibles a la parte demandante a los fines de localizar a dichos demandados.

Por los fundamentos antes expuestos, *se dictará sentencia para revocar aquella de la cual se recurre y anular, a su vez, la sentencia dictada por el Tribunal Superior, Sala de Carolina, en el caso Civil Núm. FCD 82-2289(A) ya que, al no cumplir la declaración jurada prestada con los requisitos de la Regla 4.5 de Procedimiento Civil de 1979, supra, no se adquirió jurisdicción en aquella ocasión sobre la persona de los recurrentes.*

Los Jueces Asociados Señores Hernández Denton y Fuster Berlingeri concurrieron con el resultado sin opinión escrita.