Pesante Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Caribbean Paper, Inc., Adrián Silva y Gail Marie Hatched, mediante el recurso de título, interesan la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao. La aludida sentencia declaró ha lugar una demanda en cobro de dinero y ejecución de hipoteca mueble e inmueble incoada contra ellos por el Banco Popular de Puerto Rico.
Por los fundamentos que más adelante habremos de exponer, confirmamos la sentencia apelada.
I
El 2 de marzo de 2000, el Banco Popular de Puerto Rico presentó contra los aquí apelantes demanda en cobro de dinero y ejecución de hipoteca mueble e inmueble. En esa misma fecha se expidieron los *1080 correspondientes emplazamientos.
Transcurridos poco más de cinco meses y luego de múltiples gestiones realizadas por los emplazadores Aguedo De La Torre y Diana M. López, sin poder diligenciar los emplazamientos, el Banco Popular solicitó autorización para emplazar a los demandados por edictos.
Surge del expediente ante nuestra consideración que los emplazadores se personaron a la dirección física del negocio de los demandados, conversaron con los vecinos, con una ex-empleada de los demandados, trataron de comunicarse con ellos a los números telefónicos que surgían de su investigación, acudieron al Departamento de Estado, pero no encontraron ninguna corporación con el nombre de la demandada, visitaron la Alcaldía de Humacao y el Cuartel de la Policía del mismo pueblo y no lograron dar con el paradero de la parte demandada. También se comunicaron con un operador de la Puerto Rico Telephone Co. y no encontraron ningún número en servicio de los demandados. Para acreditar lo precedentemente expuesto, ambos emplazadores suscribieron sendas declaraciones juradas haciendo constar las gestiones realizadas para localizar a los demandados y diligenciar los emplazamientos.
La información recopilada apunta a que la Caribbean Paper Company, Inc. hacía más de un año que había desocupado el local que habían arrendado para operar el negocio, que habían vendido la maquinaria y quien la compró desconocía el paradero de los dueños, que éstos, Adrián Silva y Gail Hatchell, se habían divorciado y que ex-empleados, vecinos del negocio y personas que en algún momento hicieron negocios con ellos desconocían sus paraderos. Ante este cuadro fáctico, el 28 de agosto de 2000, el Tribunal recurrido autorizó se emplazaran a los demandados por edictos.
El 4 de octubre de 2000, los demandados-apelantes fueron emplazados por edicto publicado en el periódico “The San Juan Star”. Dos semanas después, sin haber contestado la demanda, los apelantes y su abogado se reunieron con el Banco Popular y comenzaron conversaciones con miras a llegar un acuerdo para que se dispusiera del litigio pendiente. Surge del expediente ante nuestra consideración que ya para la fecha en que se celebró la reunión entre las partes, éstos tenían especial conocimiento del pleito pendiente y de que estaban “unos términos corriendo”. No empece a lo anterior, los apelantes no hicieron gestiones afirmativas para culminar las conversaciones sostenidas ni contestaron la demanda. Transcurridos aproximadamente seis meses de inacción, el Banco Popular solicitó del Tribunal la anotación de rebeldía.
El 26 de abril de 2001, poco más de seis meses desde que los demandados fueron emplazados por edictos y de que las partes se reunieran con el fin de ponerle fin al pleito, el Tribunal recurrido le anotó la rebeldía a la demandada-apelada. Posteriormente, el 20 de julio siguiente, (3 meses después de la anotación de rebeldía), el Banco Popular presentó Moción Solicitando Sentencia en Rebeldía y el Tribunal, el 31 de julio, notificada el 14 de agosto de 2001, emitió sentencia declarando con lugar la demanda en cobro de dinero y ejecución de hipoteca. El Tribunal, en su sentencia, condenó a los demandados-apelantes, Caribbean Paper Company, Inc., Adrián Silva y a su esposa Gail Marie Hatchell y la sociedad legal de gananciales constituida por ambos, a pagar al Banco Popular la suma principal de $1,915,018.85 por concepto de principal adeudado, más intereses acumulados los cuales al día 29 de noviembre de 1999 ascendían a la suma de $232,926.67 y sus correspondientes intereses a partir de la antes indicada fecha. Así también, al pago de las costas, gastos y desembolsos que ocasione la reclamación judicial; y además, al pago de los honorarios de abogado en una cantidad igual al 10% del principal, o sea, la suma líquida de $485,109.40.
Dispuso el tribunal, además, que de no efectuarse el pago de las cantidades adeudadas dentro del término de 30 días a partir de la fecha en que se notificare la sentencia, fuesen vendidos el bien inmueble y bienes muebles que garantizaban la cantidad adeudada.
Dos días después de notificada la sentencia en rebeldía, los apelantes presentaron una moción solicitando se dejara sin efecto la misma. Así también, el 24 de agosto siguiente presentaron una petición de reconsideración *1081 de la sentencia. Luego de varios trámites procesales que incluyeron la oposición del Banco Popular a que se dejara sin efecto la sentencia en rebeldía y la correspondiente réplica de los apelantes, el Tribunal recurrido se reafirmó en su dictamen.
Oportunamente, los demandados apelantes presentaron la apelación que nos ocupa. En su escrito, le imputaron al tribunal a quo el haber errado al dictar la sentencia en rebeldía por cuanto no se había adquirido válidamente jurisdicción sobre los demandados, ya que se incumplió con el trámite para el emplazamiento por edictos; que erró el Tribunal recurrido al negarse a dejar sin efecto la sentencia en rebeldía y que ésta no debió dictarse por razón de que la solicitud de anotación de rebeldía nunca le fue notificada a los apelantes.
Examinado el caso y con el beneficio de la comparecencia de las partes, confirmamos la sentencia apelada.
II
Actuó correctamente el Tribunal de Primera Instancia al autorizar el emplazamiento por edictos a los demandados.
El mecanismo procesal de emplazamiento por edicto está reglamentado por la Regla 4.5 de las de Procedimiento Civil, 32 L.P.R.A., Ap. III. Dicha Regla dispone lo siguiente:

“(a) Cuando la persona a ser emplazada estuviera fuera de Puerto Rico, o estando en Puerto Rico, no pudiere ser localizada después de realizadas las diligencias pertinentes, o se ocultare para no ser emplazada, o si fuere una corporación extranjera sin agente residente, y así se comprobare a satisfacción del Tribunal mediante declaración jurada, con expresión de dichas diligencias, y apareciere también de dicha declaración, o de la demanda jurada presentada, que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, el tribunal podrá dictar una orden disponiendo que el emplazamiento se haga por un edicto. No se requerirá un emplazamiento negativo como condición para dictar la orden disponiendo que el emplazamiento se haga por edicto. La orden dispondrá que la publicación se haga una sola vez en un periódico de circulación diaria general en la isla de Puerto Rico. La orden dispondrá, además, que dentro de los diez (10) días siguientes a la publicación del edicto, se le dirija al demandado una copia del emplazamiento y de la demanda presentada, por correo certificado con acuse de recibo o cualquier otra forma de servicio de entrega de correspondencia con acuse de recibo, siempre y cuando dicha entidad no posea vínculo alguno con la parte demandante y no tenga interés en el pleito, al lugar de su última residencia conocida a no ser que se justifique por declaración jurada que a pesar de los esfuerzos realizados, con expresión de éstos, no ha sido posible localizar residencia alguna conocida del demandado, en cuyo caso el tribunal excusaría el cumplimiento de esta disposición.

(b) El contenido del edicto deberá constar de la siguiente información:

(1) Título — Emplazamiento del Edicto, (2) Sala del Tribunal de Primera Instancia, (3) Número del caso, (4)Nombre del deman-dante, (5) Nombre del demandado a emplazarse, (6) Naturaleza del pleito, (7) Nombre, dirección y teléfono del abogado del demandante, (8) Nombre de la persona que expidió el edicto, (9) Fecha de la expedición, (10) Término dentro del cual la persona así emplazada deberá contestar la demanda según se dispone en la Regla 10.1, y advertencia a los efectos de que si no contesta la demanda radicando el original de la contestación ante el tribunal correspondiente, con copia a la parte demandante, se le anotará la rebeldía y se le dictará sentencia concediendo el remedio solicitado sin más citarle y oírle. El edicto identificará en letra negrilla tamaño diez (10) puntos, toda primera mención de persona natural y/o jurídica que se mantiene en el mismo. Si la demanda fuere enmendada en cualquier fecha anterior o la de la comparecencia del demandado que hubiere sido emplazado por edicto, dicha demanda enmendada deberá serle notificada en la forma dispuesta por la regla de emplazamiento aplicable al caso. En el caso de demandados ausentes de Puerto Rico, el demandante podrá sustituir la notificación por edicto con la entrega personal al demandado, de copias de la demanda y del emplazamiento. El diligenciamiento de dicho emplazamiento se hará a tenor de lo dispuesto en la Regla 4.3. ”

*1082 El Banco Popular cumplió a cabalidad con todos los requisitos contenidos en el precepto legal que antecede. Los emplazadores contratados por los apelados realizaron múltiples diligencias con miras a localizar a los demandados. No albergamos dudas que dichas diligencias se realizaron de buena fe y la no disponibilidad de los demandados provocó que, como método alterno de allegar a los demandados a la jurisdicción del Tribunal, se tuviera que recurrir al emplazamiento por edictos.
Hace aproximadamente cuarenta (40) años, el Tribunal Supremo en Mundo v. Fuster, 87 D.P.R. 363 (1963), consignó que era “buena práctica inquirir de las autoridades de la comunidad, la policía, el alcalde, el administrador de correos que son las personas más llamadas a conocer la residencia o el paradero de las personas que viven en la comunidad” y, por ende, que podrían arrojar luz sobre la localización de las personas a ser emplazadas. No obstante, este pronunciamiento en modo alguno pretendió que en todos los casos tenían que hacerse esas gestiones para que procediese los emplazamientos por edictos. En el presente caso, los apelantes arguyen que el emplazamiento por edictos fue nulo por cuanto no se inquirió al administrador de correos sobre el conocimiento que éste pudiese tener relacionado al paradero o la dirección de los apelantes. No les asiste la razón.
En Lanzó Llanos v. Banco de la Vivienda, 133 D.P.R. 507, 514 (1993), se aclararon las expresiones vertidas en Mundo v. Fuster, supra. En esta ocasión se precisó lo siguiente:

“Las diligencias que describimos en Mundo v. Fuster, supra, constituyen meros ejemplos de lo que sería una buena práctica al intentar encontrar al demandado con el propósito de notificarle acerca de la acción instada en su contra. No obstante, éstas no constituyen una enumeración cerrada de posibilidades ni puede permitirse que se conviertan en fundamento por la recitación automática de alegaciones evidentemente estereotipadas con el fin de obtener, sin más, la autorización para emplazar mediante edictos, con toda abstracción de las circunstancias particulares del caso tratado...

... para que proceda una orden de citación mediante edictos, la declaración jurada que le sirve de base tiene que demostrar que el demandante ha realizado gestiones encaminadas en forma eficaz para tratar de localizar al demandado y emplazarlo personalmente, y que a pesar de esa diligencia ha sido imposible localizarlo, debiendo establecer los hechos específicos que demuestran tal diligencia.

Por tanto, la razonabilidad de las gestiones efectuadas dependerá de las circunstancias particulares de cada caso. ”

Con lo anterior de trasfondo, forzoso es concluir que las gestiones hechas por los emplazadores De la Torre y López intentando efectuar el emplazamiento personal de los demandados cumplieron con lo estatuido en Lanzó Llanos v. Banco de la Vivienda, supra. Así también, las declaraciones juradas que ambos suscribieron contenían hechos específicos que demostraron las diligencias efectuadas y no meras conclusiones o generalidades. Reyes v. Oriental Federal Sevings Bank, 133 D.P.R. 15(1993).
Examinadas las mencionadas declaraciones juradas, de las mismas se desprende que los emplazadores realizaron un sin número de gestiones o diligencias para localizar a los demandados: fueron al Cuartel de la Policía, a la Oficina del Alcalde, a la última dirección conocida de los demandados, al Departamento de Estado, llamaron por teléfono a los números que tenían los apelantes, fueron al local donde ubicaba la corporación demandada, preguntaron a los comercios aledaños a la corporación demandada, se comunicaron con una ex-empleada de la corporación, así también con la persona que adquirió de los demandados una maquinaria de la corporación. Luego de estas gestiones y ante la imposibilidad de conseguir a los demandados para poder diligenciarles los emplazamientos personalmente, es que se recurre a solicitar del Tribunal la autorización para emplazarlos por edictos.
Examinada la totalidad de las circunstancias que rodearon el emplazamiento por edicto, concluimos que el Tribunal de Primera Instancia adquirió jurisdicción sobre los demandados conforme a los parámetros jurídicos *1083 esbozados y la sentencia dictada es válida y conforme a derecho.
De otra parte, y relacionado con los emplazamientos por edictos, los apelantes señalan como razón adicional para su nulidad, que transcurrieron en exceso de seis meses desde que se presentó la demanda hasta que se emplazó por edictos a la parte demandada. Tampoco les asiste la razón.
En el presente caso, se presentó la demanda el 2 de marzo de 2000, expidiéndose en dicha fecha los correspondientes emplazamientos. El 18 de agosto de 2000, 5 1/2 meses después de la presentación de la demanda, se presentó Moción Solicitando Se Autorice Emplazamiento por Edicto. Así las cosas, el 28 de agosto de 2000, el Tribunal a quo emitió la orden para emplazar por edicto, pero por causas atribuibles al propio Tribunal, la secretaría notificó la aludida orden expirado el término de seis meses, es decir, el 18 de septiembre de 2000. Esta dilación en el trámite administrativo del Tribunal, en todo caso, puede interpretarse como una extensión tácita al término de los seis meses. A escasos seis (6) días, se procedió con la publicación del edicto.
De otro modo, actuó correctamente el Tribunal al anotarle la rebeldía a la parte demandada y al dictar la correspondiente sentencia. El ordenamiento procesal civil provee para que se anote la rebeldía cuando una parte contra la cual se solicita una sentencia que concede un remedio afirmativo, haya dejado de presentar alegaciones o de defenderse en la forma prescrita por las Reglas de Procedimiento Civil. 32 L.P.R.A., Ap. III, R. 45.1. Así también, se provee para que por causa justificada, el Tribunal, en el ejercicio de su discreción, pueda dejar sin efecto la anotación de rebeldía, y cuando se haya dictado la correspondiente sentencia, se podrá dejarla sin efecto de acuerdo con la Regla 49.2.
Sabido es que la consecuencia jurídica de la anotación de rebeldía es que se estiman aceptadas todas y cada una de las materias bien alegadas en la demanda, es decir, los hechos correctamente alegados. El Tribunal debe evaluar si, en virtud de tales hechos no controvertidos, existe válidamente una causa de acción que amerita la concesión del remedio reclamado. Rivera Rivera v. Insular Wire Products, Corp., 140 D.P.R. 912(1996). La tendencia moderna muestra como razón adicional, la obligación de evitar que la adjudicación de las causas se paralicen simplemente por las circunstancias de que una parte opte por detener el proceso de litigación. Se da la oportunidad al adversario de refutar la reclamación; si por su pasividad o temeridad opta por no defenderse, como remedio correctivo, se expone a que se dicte sentencia en su contra. Continental Ins. Co. v. Meta Marina, 106 D.P.R. 806, 814, 815(1978).
En el presente caso, la parte demandada fue debidamente emplazada por edictos. Esta conocía perfectamente la reclamación incoada en su contra por el Banco Popular. Estaba debidamente apercibida del término del cual disponía para contestar la demanda. Tan es así, que se reunieron con los demandantes con miras a buscar soluciones para ponerle fin al litigio. Surge del expediente ante nuestra consideración que estaban muy conscientes de que habían unos términos corriendo. Este no es el caso en que una parte se sienta a conversar con la otra parte y son sorprendidos en su buena fe. Aquí los demandantes esperaron cerca de 5 lA meses para solicitar que se les anotara la rebeldía a los demandados ante la falta de diligencia exhibida por éstos para finiquitar el pleito. Como si ello fuera poco, luego de solicitada la anotación de rebeldía, esperaron aproximadamente tres meses para solicitar que se dictara la-correspondiente sentencia. No fue hasta notificada la sentencia que los demandados exhibieron alguna diligencia y solicitaron la reconsideración y el relevo de la misma. Sin embargo, en su petitorio no ponen en condiciones al Tribunal para que determine los méritos de su reclamo. No aducen la causa justificada que se requiere para ello ni que poseen una defensa meritoria. Nada mencionan sobre la inválidez de la deuda o de la reclamación hecha por el Banco Popular.
Se nos pide que se deje sin efecto la sentencia, por cuanto las partes estaban en conversaciones y que incluso llegaron a un acuerdo que culminó en que se perfeccionó el contrato de dación en pago para así dar por satisfecha la deuda. Hemos examinado detenidamente el expediente ante nuestra consideración y esta representación que se nos hace no se ajusta a la realidad. El acuerdo de dación en pago nunca fue perfeccionado; no hubo un acuerdo final entre las partes. Lo que hubo fue unas conversaciones inconclusas y *1084 una falta de seguimiento de la parte quien se suponía debiera tener más interés en resolver el asunto.
Somos partícipes de la política judicial de que los casos sean vistos en sus méritos y que se le preserve al litigante su día en corte. No obstante, para así también tenemos que ser igualmente justos con la parte que ha sido diligente en que se resuelva su caso prontamente y se termine la incertidumbre. Debemos velar por los intereses del público en general en evitar la congestión en los calendarios y las demoras innecesarias en el trámite judicial, promoviendo así la solución justa, rápida y económica de las controversias. Reyes Díaz v. Estado Libre Asociado de Puerto Rico y otros,_D.P.R._(2001), 2001 J.T.S. 171, opinión de 7 de diciembre de 2001.
Finalmente, el Tribunal recurrido no erró al sostener la validez de la sentencia en rebeldía, ausente la notificación de dicha solicitud a la parte apelante. Para disponer de dicho señalamiento, basta señalar lo dispuesto en la Regla 67.1 de las de Procedimiento Civil:

“Excepto cuando otra cosa se disponga en estas reglas, toda orden que de acuerdo con sus términos deba ser notificada, toda alegación subsiguiente a la demanda original, a menos que el Tribunal ordenare otra cosa debido al número de demandados, todo escrito relacionado con descubrimiento de prueba que deba ser notificado a una parte, a menos que el tribunal ordenare otra cosa, y toda moción escrita que no pueda ser oída ex parte, se notificará a cada una de las partes. No será necesario notificar a las partes en rebeldía por falta de comparecencia, excepto que las alegaciones en que se soliciten remedios nuevos o adicionales contra dichas partes, se les notificarán en la forma dispuesta en la Regla 4.4. para diligenciar emplazamientos.”

Cónsono con el precepto que antecede, resultaba innecesario notificarle de la solicitud de la anotación de rebeldía, por cuanto los apelantes no habían contestado la demanda, a pesar de haber sido debidamente apercibidos de cuál iba a ser la consecuencia jurídica de tal omisión.
No detectamos abuso de discreción por parte del Tribunal de Primera Instancia al resolver como lo hizo.
Confirmamos la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Leda. Aida I. Oquendo Graulau
Secretaria General