Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| UNIVERSAL INSURANCE COMPANY Peticionaria | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas |
|---|---|---|
| v. | KLCE202401122 | |
| MM CONSTRUCTION, INC.; MANFRED MARKOFF CASCO; JANNICE VELÁZQUEZ MERCADO y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS; COMPAÑÍA ABC Recurrida | | Caso Núm. CG2024CV01960 <br><br> Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de febrero de 2025.

Comparece Universal Insurance Company (Universal o parte peticionaria), mediante recurso de *certiorari*, solicitando la revocación de una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, (TPI), el 12 de septiembre de 2024. Mediante esta, el foro primario declaró *No Ha Lugar* la *Solicitud de Orden para Emplazar por Edicto* a la codemandada, señora Jannice Velázquez Mercado, instada por la parte peticionaria.

Por los fundamentos que expondremos, hemos decidido expedir el auto de *certiorari* y *Revocar* la *Orden* recurrida.

**I. Resumen del tracto procesal**

El 30 de mayo de 2024, Universal instó una acción en cobro de dinero contra Manfred Markoff Casco (señor Markoff Casco), Jannice Velázquez Mercado (señora Velázquez Mercado), la Sociedad Legal de

Gananciales compuesta or estos, y MM Construction, Inc., (MM), (en conjunto, parte recurrida). Adujo haber expedido una fianza de pago y cumplimiento (*performance bond*) a nombre de MM, para garantizar cierto proyecto de construcción. Continuó alegando que, ante la falta de pago de MM a subcontratistas y suplidores relacionados a dicho proyecto, tuvo que desembolsar cierta cantidad de dinero para eso fines, que especificó. Abundó que, por virtud de un acuerdo de indemnización (*agreement of indemnity*) suscrito por Universal con los demandados, estos últimos se obligaron mancomunada y solidariamente a reembolsar al primero toda suma de dinero, más intereses acumulados que se tuviera que desembolsar bajo la fianza expedida. Finalmente, habiendo desembolsado Universal en favor de los referidos subcontratistas y suplidores las cantidades de dinero que especificó en la *Demanda,* solicitó al TPI que, conforme al referido *agreement indemnity,* les impusiera a los demandados el pago de lo debido.

Por motivo de la presentación de dicha *Demanda,* el 3 de junio de 2024, fueron expedidos los emplazamientos correspondientes a los demandados allí identificados, para lo cual el TPI dictó una *Orden,* advirtiendo sobre el término reglamentario de ciento veinte (120) días para diligenciarlos.

A los pocos meses, el 11 de septiembre de 2024, la parte peticionaria presentó un escrito que tituló *Al Expediente Judicial.* A través de este informó que, el 30 de agosto de 2024, había emplazado a: MM; al señor Markoff Casco; y a la Sociedad Sociedad Legal de Gananciales que este constituye con la señora Velázquez Mercado, por conducto del propio señor Markoff Casco. Además, adujo que la señora Velázquez Mercado no había podido ser emplazada, a pesar de las gestiones realizadas por su emplazadora, la señora Cahineé Medina Fernández (la emplazadora). A esos efectos, acompañó copia de la *Declaración Jurada* de la emplazadora,

para sostener las diligencias específicas realizadas con el propósito de tratar de emplazar personalmente a la señora Velázquez Mercado, aunque sin éxito.

En vista de lo narrado en la declaración jurada por la emplazadora, en igual fecha Universal también presentó una *Solicitud de Orden para Emplazar por Edicto* a la señora Velázquez Mercado. Esta petición estuvo acompañada de la referida declaración jurada de la emplazadora y de un proyecto de *Orden* y *Emplazamiento por dicto*.

Sin embargo, el 12 de septiembre de 2024, el TPI emitió y notificó la *Orden* cuya revocación nos solicita Universal, declarando *No Ha Lugar* la *Solicitud de Orden para Emplazar por Edicto*.

En desacuerdo, Universal presentó una *Solicitud de Reconsideración,* resaltando las gestiones realizadas por la emplazadora para diligenciar personalmente a la señora Velázquez Mercado, sin éxito, no pudiendo ser localizada a pesar de las múltiples diligencias llevadas a esos efectos.

No obstante, el TPI declaró *No Ha Lugar* la *Solicitud de Reconsideración,* al entender que las gestiones realizadas por la emplazadora habían sido insuficientes.

Es de tal curso decisorio del cual Universal recurre ante nosotros, mediante recurso de *certiorari,* señalando la comisión del siguiente error:

> Primer Error: Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la Solicitud de Orden Para Emplazar Por Edicto.

Mediante *Resolución* del 25 de octubre de 2024 le concedimos un término de veinte (20) días a la parte recurrida para exponer su posición. Transcurrido en exceso dicho término, sin que la parte recurrida se expresara, damos por perfeccionado el recurso ante nuestra consideración y procedemos a resolverlo sin el beneficio de su comparecencia.

**II. Exposición de Derecho**

a.

El emplazamiento es el mecanismo procesal mediante el cual se le notifica al demandado de la existencia de una reclamación instada en su contra y se le requiere que comparezca para que formule alegación responsiva. Es mediante el debido diligenciamiento del emplazamiento que el tribunal adquiere jurisdicción sobre la persona para resolver un asunto. *Cancel Rivera v. González Ruiz*, 200 DPR 319, 330 (2018); *Torres Zayas v. Montano Gómez et als.*, 199 DPR 458, 467 (2017); *Global v. Salaam*, 164 DPR 474, 480 (2005). En consonancia, no es hasta que se diligencie el emplazamiento que se adquiere jurisdicción, y la persona puede ser considerada propiamente parte, pues, aunque haya sido nombrada en el epígrafe de la demanda, hasta ese momento sólo es parte nominal. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., Lexis Nexis, 2010, pág. 220. *Torres Zayas v. Montano Gómez, supra; Sánchez Rivera v. Malavé Rivera*, 192 DPR 854 (2015).

Como norma general, expedido el emplazamiento, debe ser diligenciado juntamente con la demanda personalmente, ya sea mediante su entrega física a la parte demandada, o haciéndola accesible en su inmediata presencia. Regla 4.4 de Procedimiento Civil, 32 LPRA Ap. V, R.4.4. No obstante, cuando la entrega personal no puede efectuarse, la Regla 4.6 de Procedimiento Civil, 32 LPRA Ap. V, 4.6., a modo de excepción, permite el emplazamiento por edicto cuando no se puede localizar a la persona a ser emplazada. Por ello el Tribunal Supremo ha reconocido dos maneras para diligenciar un emplazamiento, de forma personal o mediante edicto. *Rivera v. Jaume*, 157 DPR 562, 575 (2002). Retornando a la Regla 4.6 citada, allí se dispone que el Tribunal podrá autorizar el emplazamiento mediante edicto por alguna de las siguientes razones:

(a) **Cuando la persona a ser emplazada** esté fuera de Puerto Rico, que **estando en Puerto Rico no pudo ser**

> **localizada después de realizadas las diligencias pertinentes o se oculte para no ser emplazada**, o si es una corporación extranjera sin agente residente y **así se compruebe a satisfacción del tribunal mediante una declaración jurada que exprese dichas diligencias**, y aparezca también de dicha declaración o de la demanda presentada que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, el tribunal podrá dictar una orden para disponer que el emplazamiento se haga por un edicto. No se requerirá un diligenciamiento negativo como condición para dictar la orden que disponga que el emplazamiento se haga mediante edicto. (Énfasis provisto).
>
> ...

De la precitada regla se desprende que, si la persona a ser emplazada está en Puerto Rico, para poder emplazarla mediante edicto es necesario que la parte interesada le acredite al Tribunal que ha sido diligente al tratar de localizar al demandado para emplazarlo personalmente, pero a pesar de las diligencias realizadas, no pudo localizarlo. *Rivera v. Jauma*, supra, p. 576; J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Estados Unidos de América, Publicaciones JTS, 2011, pág. 356. A tales efectos, y para poner al Tribunal en posición de determinar que realmente se realizaron dichas diligencias, el emplazador debe presentar una declaración jurada con "hechos específicos que demuestren las gestiones efectivas realizadas para localizar al demandado y si se ha agotado toda posibilidad razonable disponible al demandante para localizarlo". *Íd.*, págs. 576-577.

Sobre ese particular, nuestro Tribunal Supremo ha expresado que:

> [L]a razonabilidad de las gestiones efectuadas dependerá de las circunstancias particulares de cada caso. La suficiencia de tales diligencias se medirá teniendo en cuenta todos los recursos razonablemente accesibles al demandante para intentar localizar al demandado. Para hacer tal determinación, el tribunal deberá examinar si, a la luz de las circunstancias del caso, **las diligencias practicadas con el fin de notificar personalmente al demandado agotaron toda posibilidad razonable disponible al demandante para poder localizarlo.** (Énfasis provisto). *Llanzó Llanos v. Banco de la Vivienda*, 133 DPR 507, 515 (1993).

Es decir, la Regla 4.6 exige la comprobación de diligencias vigorosas y honesto esfuerzo para citar al demandado personalmente sólo cuando, estando en Puerto Rico, el demandado no puede ser emplazado, o cuando estando fuera de Puerto Rico, se ignores su dirección y paradero. *Sánchez Ruiz v. Higuera Pérez*, 203 DPR 982 (2020), citando a J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Estados Unidos de América, Publicaciones JTS, 2011, pág. 356.

De igual forma, el mismo alto Foro ha indicado que es una buena práctica "inquirir de las autoridades de la comunidad, la policía, el alcalde, del administrador de correos que son las personas más llamadas a conocer la residencia o el paradero de las personas que viven en la comunidad". (Énfasis provisto). *Mundo v. Fuster*, 87 DPR 363, 372 (1983).

Es síntesis, la declaración jurada "debe contener hechos específicos demostrativos de esa diligencia y no meras generalidades que no son otra cosa que prueba de referencia", y debe expresar las personas con quiénes investigó y sus correspondientes direcciones. J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 3era ed., Ponce, Editorial Nomos, S.A., 2023, pág. 85. De igual forma, la declaración jurada "tiene que establecer las diligencias realizadas en forma tan precisa y detallada como sea necesario para que el Tribunal pueda entender, medir y aquilatar la suficiencia de tales gestiones a la luz de las circunstancias de cada caso en particular". *Llanzó Llanos v. Banco de la Vivienda*, supra, pág. 515. Solamente cuando se demuestra fehacientemente que se han llevado a cabo aquellas diligencias con el propósito de encontrar al demandado, puede el Tribunal conceder el permiso para emplazarlo mediante la publicación del emplazamiento por edicto. *Íd.*, pág. 513.

**III. Aplicación del Derecho a los hechos**

a.

La única controversia que nos ha tocado dirimir en el recurso presentado está bien definida, y se resume en lo siguiente; ¿abusó de su discreción el TPI al juzgar que la declaración jurada de la emplazadora presentada por Universal para justificar la petición de emplazamiento mediante edicto no fue suficiente en derecho para autorizarlo? En este sentido, nos corresponde examinar la referida declaración jurada para determinar si, entre otras, de allí surge *que se hubiesen realizado gestiones potencialmente efectivas para tratar de localizar al demandado y emplazarlo personalmente. Global v. Salaam, supra,* p. 483; *Lanzó Llanos v. Banco de la Vivienda, supra.* Cabe reiterar, además, que la declaración jurada, *tiene que establecer las diligencias realizadas en forma tan precisa y detallada como sea necesario para que el Tribunal pueda entender, medir y aquilatar la suficiencia de tales gestiones a la luz de las circunstancias de cada caso en particular. Lanzó Llanos v. Banco de la Vivienda,* supra, pág. 515.

Sobre lo anterior, valga iniciar señalando que este foro intermedio está en idéntica posición que el tribunal *a quo* para evaluar prueba documental. *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Por tanto, visto que la determinación del TPI refiere a la valoración que este hizo de la declaración jurada presentada por Universal, como prueba de las diligencias efectuadas para emplazar personalmente a la codemandada Jannice Velázquez Mercado, estamos en igual posición que el foro recurrido para determinar si el contenido de dicho documento resultaba suficiente en derecho para obtener la autorización de emplazarla mediante edicto.

En los próximos párrafos examinaremos la referida declaración jurada, a la luz de los precedentes que ordenan su valoración para fines de

determinar si fue suficiente en derecho para autorizar el emplazamiento mediante edicto.

b.

En primer lugar, la emplazadora acreditó haber recibido el emplazamiento para ser diligenciado a la última dirección conocida y suplida por la codemandada Jannice Velázquez Mercado, la cual era Los Paisajes, 105 Calle Marte, Gurabo, Puerto Rico. Una vez tuvo conocimiento de dicha dirección, la emplazadora afirmó haber indagado sobre esta en la página virtual del Departamento de Recaudación de Ingresos Municipales de Puerto Rico, pero advino en conocimiento que la dirección suplida no existía, pues las casas terminaban en la 103 y continuaban en la 125, de la Calle Jardín 124, Gurabo, Puerto Rico. A pesar de ello, surge de la declaración jurada que la emplazadora confirmó esta averiguación, a través de una visita a la referida urbanización.

Con todo, el 11 de junio de 2024 a las 4:33pm, la emplazadora afirmó haberse presentado a la urbanización Los Paisajes, Gurabo, y se comunicó con el guardia de seguridad, de apellido Mojica, el cual le dio acceso al primer portón de la urbanización. Una vez pudo acceder al primer portón, se encontró con un segundo portón donde había un sistema de tele entradas, en el cual marcó los números 1005 y 0105. Sin embargo, en ninguno de los números obtuvo respuesta, y no puedo acceder al segundo portón.

Luego, el 2 de julio de 2024, a las 11:32am, la emplazadora volvió a personarse a Los Paisajes, Gurabo, Puerto Rico. Ese día pudo comunicarse con el guardia de seguridad de apellido Castellano, el cual le dio acceso al primer portón de la urbanización. En el segundo portón volvió a marcar los números 1005 y 0105, y tampoco hubo respuesta. No obstante, la emplazadora esperó en el segundo portón por varios minutos y llegó una señora residente de la urbanización a la cual le explicó el propósito de su

visita y le preguntó si había una oficina administrativa. En respuesta, la señora le indicó no tener el número telefónico de la oficina, pero le explicó que la misma estaba ubicada al lado de la piscina y le permitió la entrada a la urbanización. De igual forma, la señora le indicó no conocer a la persona que estaba buscando para emplazarla. De todos modos, una vez la emplazadora accedió a la urbanización, se dirigió a las residencias 125 y 124, pero no había nadie. Declaró que en ese momento no había vecinos para preguntar y por ello, dejó una nota con su información de contacto en las puertas de las residencias antes mencionadas. Luego, se acercó al área de la piscina y no vio ninguna oficina administrativa. Al marcharse de la urbanización, recibió una llamada del número telefónico 787-383-4549, quien se identificó como Jessica Coto y le indicó que había encontrado la nota en la puerta de la entrada de la residencia 124, pero expresó no conocer a la señora Velázquez Mercado.

Posteriormente, la emplazadora Medina Fernández realizó una búsqueda en www.google.com de la señora Velázquez Mercado y encontró el número telefónico 787-364-2626. A partir de ello, el 22 de julio de 2024, a las 7:50pm, realizó una llamada al número telefónico mencionado **y habló con quien se identificó como Jannice Velázquez**. (Énfasis provisto). La emplazadora aduce haberle explicado a la codemandada el propósito de su llamada, pero esta última indicó que *eso le compete a su esposo*. Ante lo cual, la emplazadora le solicitó a la señora Jannice Velázquez Mercado el teléfono de su esposo, el codemandado Markoff Casco, a lo que la codemandada respondió que *le daría el número de la emplazadora a su esposo y este se comunicaría*. Sin embargo, el codemandado Markoff Caso nunca se comunicó con la emplazadora.

Pasados unas dos semanas, el 6 de agosto de 2024, a las 3:49pm, la emplazadora llamó y envió un mensaje de texto al referido número telefónico, 787-364-2626, pero no hubo respuesta. Ese mismo día, a las

4:34pm, la emplazadora volvió a personarse a Los Paisajes, 125 Calle Jardín, Gurabo, Puerto Rico. En esa ocasión tuvo acceso a la urbanización gracias a un residente. Tras llegar a la residencia y no haber nadie, dejó una nota con su nombre y el teléfono pegado en la puerta.

A los pocos días, el 30 de agosto de 2024, a las 10:45am, la emplazadora se presentó al Metro Office Park, Lote 10, Guaynabo, Puerto Rico, y allí emplazó personalmente al señor Markoff Casco, codemandado, esposo de la señora Jannice Velázquez Mercado, y a MM. Surge de la propia declaración jurada **que la emplazadora Medina Fernández le preguntó al señor Markoff Casco por su esposa, la señora Velázquez Mercado, y este dijo que le daría su información para coordinar entregarle el emplazamiento,** lo que no hizo. Además, **el señor Markoff Casco confirmó que el número telefónico de la Velázquez Mercado era el 787-364-2626**. (Énfasis provisto).

Entonces, la emplazadora Medina Fernández afirmó haber llamado al número telefónico 787-364-2626, los días 29 y 3 de agosto de 2024, y el 2 de septiembre de 2024, pero en ninguna de las llamadas hubo respuestas.

Así las cosas, la emplazadora realizó búsquedas en: *www.poderjudicial.pr, www.google.com, www.Facebook.com, www.superpages.com y www.truepeoplesearch.com, p*ara encontrar direcciones, teléfonos, o alguna información adicional que ayudara a dar con el paradero de la señora Velázquez Mercado, pero no encontró nada adicional. Además, la emplazadora acudió a: la recepción del Municipio de Gurabo, en la que habló con la señora Santiago, pero esta le indicó que no conocía a la señora Velázquez Mercado; al Cuartel de la Policía de Gurabo, donde el agente Ortiz con placa número 32146, ubicado en el área de retén, indicó no conocer a la señora Velázquez Mercado; al Servicio Postal

de Gurabo, en el cual adujeron no estar autorizados a ofrecer información de sus clientes.

c.

Examinada la declaración jurada presentada por la emplazadora de Universal, según los términos que preceden y subrayamos, nos impulsa a concluir que contiene suficientes hechos específicos y detallados demostrativos de una labor diligente, no dependiente de meras generalidades, para tratar de localizar y emplazar personalmente a la codemandada Velázquez Mercado. Por una parte, la emplazadora cumplió con visitar en varias ocasiones la dirección que se le proveyó de la codemandada para diligenciar el emplazamiento, aunque sin fortuna. Al narrar esta primera gestión, la emplazadora se encargó de precisar fechas, horas y nombres de personas con las cuales habló al respecto.

En la misma tónica, una vez la emplazadora dio con el número telefónico de la codemandada, logró comunicación directa con esta, explicándole el propósito de haberle llamado, pero la señora Velázquez Mercado le refirió el asunto a su esposo, el codemandado Markoff Casco, y nunca volvió a contestar las llamadas o comunicarse con la emplazadora, a pesar de esta llamarle repetidamente. Es de notar que, una vez la emplazadora logró emplazar personalmente al codemandado Markoff Casco, este confirmó que el número telefónico utilizado por la emplazadora para comunicarse con la señora Velázquez Mercado, en efecto, era correcto. De mayor importancia aun, surge de la declaración jurada que el codemandado Markoff Casco, el cual sí fue emplazado personalmente, quedó con la emplazadora en proveerle la información relativa a la dirección donde podía ser emplazada su esposa, la codemandada Velázquez Mercado, pero, a fin de cuentas, no la proveyó. Por ello, la emplazadora insistió en las llamadas a la codemandada, aunque con el mismo resultado, no logró más comunicación con esta.

En consecuencia, la emplazadora acudió a otras vías, identificadas por la jurisprudencia, como ayuda para dar con el paradero de la codemandada, (cuartel de la Policía en Gurabo, las oficinas municipales de ese mismo pueblo, la oficina de correo postal), y la búsqueda a través de motores digitales, sin éxito.

Juzgamos diligencias potencialmente efectivas aquellas llevadas a cabo en este caso por la emplazadora al lograr obtener el número telefónico de la codemandada, comunicarse con esta, y luego inquirir personalmente con su esposo, parte codemandada y participante de la Sociedad de Gananciales con la señora Velázquez Mercado, sobre el lugar dónde encontrarla, aunque sin resultado. Es difícil pensar en otra mejor fuente para conocer el paradero de la codemandada que su esposo y codemandado en este caso.

En definitiva, evaluada la prueba documental ante nuestra atención, concluimos que Universal efectivamente cumplió con la carga que le correspondía llevar para demostrar las diligencias concretas, específicas, para dar con el paradero de la señora Velázquez Mercado, y que pudiera ser emplazada personalmente. Es decir, apreciamos en la declaración jurada discutida unas diligencias vigorosas y esfuerzo honesto para emplazar personalmente a la codemandada Velázquez Mercado, cuyo resultado negativo justificaba la autorización para emplazarla mediante edicto. En este sentido, apreciamos abuso de discreción del foro recurrido al negar la autorización para que Universal emplazara mediante edicto a la señora Velázquez Mercado, y por ello hemos decidido expedir el recurso de *certiorari* solicitado y revocar la determinación recurrida.

## IV. Parte dispositiva

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, expedimos el auto de *certiorari* y revocamos la *Orden* recurrida, emitida por el foro primario. Por tanto, se devuelve el asunto al

Tribunal de Primera Instancia para ordene la continuación de los procesos de acuerdo a lo aquí decidido, que incluye autorizar el discutido emplazamiento mediante edicto.

Consecuentemente, se le ordena a la Secretara del Tribunal de Primera Instancia, Sala Superior de Caguas, que expida los emplazamientos por edicto que corresponda en este caso.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones