Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ANTONIO ORTEGA DARDET Y OTROS<br><br>Apelante<br><br>V.<br><br>PATRICIO A. ESTEVEZ LEÓN Y OTROS<br><br>Apelada | KLAN202201021 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV06651 (508 CIVIL)<br><br>Sobre: NULIDAD DE SENTENCIA |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero de 2023.

Los apelantes, Antonio Ortega Dardet y Teresa Amorín de Ortega, solicitan que revoquemos la sentencia en la que el Tribunal de Primera Instancia desestimó la demanda sobre nulidad de sentencia.

Los apelados, Patricio A. Estévez León y María T. Posado Mellado, presentaron su alegato en oposición al recurso.

**I**

El 24 de marzo de 2008, el TPI dictó sentencia en el caso K AC200601798 a favor de los apelados y contra la Corporación Property Insurance Agency, Inc. La sentencia en la que se ordenó a la Corporación a pagar una cantidad considerable de dinero se convirtió en final y firme. Los apelantes eran los únicos accionistas de Property Insurance Agency, Inc. Durante el proceso de ejecución de la sentencia, los apelados solicitaron descorrer el velo corporativo para poder cobrar la sentencia a los apelantes. El TPI ordenó a los apelados fundamentar las razones por las que procedía descorrer el velo corporativo. Los apelados expusieron sus

argumentos para demostrar que la Corporación realizó un esquema fraudulento de desviación de fondos. La Corporación no presentó oposición alguna.

El 24 de febrero de 2010, el TPI autorizó descorrer el velo corporativo y ordenó a los apelados a someter emplazamientos. La Corporación solicitó revisión al Tribunal de Apelaciones. El 27 de mayo de 2010, el Tribunal de Apelaciones revocó al TPI porque los apelados tenían que presentar un pleito independiente contra los accionistas solicitando descorrer el velo corporativo.

El 7 de septiembre de 2010, los apelados presentaron una demanda ordinaria en la que solicitaron descorrer el velo corporativo. No obstante, la demanda se desestimó sin perjuicio, porque los emplazamientos no se diligenciaron dentro del término establecido en ley. Los apelados solicitaron la expedición de emplazamientos por edicto y una prórroga para emplazar. Estos alegaron que emplazaron a la Corporación a su última dirección conocida. Sin embargo, la empresa alegó llamarse de otra manera. Además, alegaron que intentaron emplazar sin éxito a los apelantes y a sus respectivas esposas. El TPI denegó la solicitud porque se presentó vencido el término para diligenciar los emplazamientos y desestimó la demanda sin perjuicio.

El 5 de julio de 2011, los apelados presentaron una segunda demanda solicitando descorrer el velo corporativo. Los apelados acompañaron la demanda con una solicitud para emplazar por edicto a Francisco Dardet y a su esposa porque se mudaron a México y desconocían su dirección. Según los apelados, la última dirección conocida era la existente en el primer caso. Esta dirección es la siguiente: Calle Bolivia #33, Hato Rey, Puerto Rico. Por otro lado, alegaron que la última dirección conocida de Antonio Ortega Dardet y Teresa Amorín era la siguiente: 612 Gran Bay Estates, Circle Key Biscayne, Florida.

El TPI emitió la orden siguiente: Véase declaración jurada que requiere la Regla 4.6 A y cumpla las Reglas de Procedimiento Civil.

Los apelados solicitaron autorización para emplazar por edicto a todos los apelantes y a la Corporación. La solicitud estuvo acompañada con declaraciones juradas, en las que constan las diligencias realizadas para emplazar personalmente a los apelantes.

**El TPI autorizó los emplazamientos por edicto de todos los apelantes y de Property Insurance Corp. y relevó a los apelados de notificarles con copia de la demanda y los emplazamientos a la última dirección conocida. Véase, pág. 23 de la sentencia apelada.**

El 7 de diciembre de 2012, el TPI ordenó descorrer el velo corporativo y responsabilizó a los apelantes. Según consta en esa sentencia, Francisco Ortega Dardet, su esposa y la sociedad legal de gananciales se emplazaron mediante un edicto publicado el 11 de octubre de 2011. La rebeldía se les anotó el 10 de abril de 2012. Los codemandados, Antonio Ortega Dardet, Teresa Amorín de Ortega y su sociedad legal de bienes gananciales y Property Insurance fueron emplazados mediante edicto publicado el 13 de junio de 2012. La rebeldía de dichos demandados les fue anotada mediante orden del 19 de julio de 2012. Véase, pág. 145 del apéndice.

El 7 de diciembre de 2020, los apelantes presentaron la demanda que nos ocupa, en la que solicitaron la nulidad de la sentencia en su contra, porque alegaron que no fueron emplazados conforme a derecho. La demanda se presentó al amparo de la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V. Los apelantes alegaron que esa sentencia es nula, porque los apelados engañaron al tribunal sobre las diligencias que realizaron para emplazarlos

personalmente con el propósito de obtener la autorización para emplazarlos por edicto. Los hermanos Ortega Dardet argumentaron que no comparecieron al pleito, porque nunca se enteraron de la demanda en su contra.

Los apelados solicitaron la desestimación de la demanda, porque no expone una causa de acción que justifique un remedio y adujeron que las alegaciones de fraude eran temerarias y frívolas. Según los apelados, la intención de los apelantes era burlar el cumplimiento de la sentencia en su contra y el término de seis meses para presentar una moción de relevo de sentencia.

Los apelantes presentaron su oposición, porque la moción de desestimación era realmente una solicitud de sentencia sumaria que no cumplía con los requisitos de la Regla 36 de Procedimiento Civil. Además, rechazaron la inexistencia de una causa de acción que justifique la concesión de un remedio. Por último, argumentaron que no se les emplazó correctamente, porque no recibieron una notificación a su última dirección conocida. Los apelantes adujeron que la notificación con posterioridad a la publicación del edicto es parte esencial del debido proceso de ley.

El 2 de junio de 2021, los apelantes presentaron una réplica. El 17 junio de 2021 los apelados presentaron una dúplica.

El TPI hizo un recuento de las diligencias que realizaron los apelados para localizar a los apelantes que resultaron infructuosas y justificaron los emplazamientos por edictos. **Los apelados acreditaron dichas diligencias en una declaración jurada.** Según consta en la sentencia, los apelados intentaron localizar a Francisco Ortega Dardet y a su esposa, antes de presentar la demanda, en el Apartamento 8-B del Condominio Victoria Plaza, Calle Cándida #10 en Condado, PR. Los vecinos le informaron que ese apartamento estaba desocupado. A través de varios contactos en Puerto Rico y, específicamente la señora Rosadel Santana, Ex

Vicepresidente de la Property Insurance Corp., se enteraron que tenían propiedades en Miami, Florida. No obstante, no le proveyó la dirección exacta. Los apelados contrataron a los abogados, Jorge Calves Prieto y Juan Vicente Urdaneta, para localizar a los apelantes en la Florida. La declaración jurada que presentaron los apelados tiene las direcciones y números de teléfonos de las oficinas de ambos abogados. Estos abogados contrataron un alguacil de la Florida que acudió al Condominio 600, Gran Perre Drive 5BS, Key Biscayne, Florida 33149-2703, y contactó a la señora María Luisa Dardet madre los apelantes. La señora María Luisa Dardet le informó que residía en ese apartamento, que Francisco Ortega Dardet era el dueño y que lo utilizaba cuando venía de México donde residía. No obstante, también le dijo que desconocía la dirección donde localizar a sus hijos.

Además, consta en la sentencia que los apelados se enteraron por conocidos de los apelantes que Francisco Ortega Dardet y su esposa residían en México, que viajaban ocasionalmente a Estados Unidos y que su dirección en México era en la Colonia Cuauhtémoc, pero no tenían más información. El señor Patricio Esteves León declaró que se desarrolló un esfuerzo máximo para emplazar a los apelantes, pero no se había podido lograr en una forma positiva. Los apelados solicitaron a los contratantes en la Florida una certificación de las gestiones que realizaron para localizar a los apelantes.

El foro apelado concluyó que los apelantes se limitaron a cuestionar la declaración jurada con alegaciones de que para los años 2010 y 2011 el apartamento en la calle Cándida era propiedad de Francisco Ortega y estaba rentado. El TPI resolvió que sus alegaciones carecían de especificidad y de prueba para contradecir la declaración jurada.

El tribunal sentenciador rechazó las alegaciones de que la dirección de la Corporación era fácil de corroborar. El foro primario concluyó que de la información pública disponible y de los documentos anejados a la demanda surgen más dudas que respuestas sobre cuál es la dirección correcta. El tribunal encontró en el Registro de Corporaciones que existía otra corporación ubicada en la misma dirección en la que los apelantes alegan están las oficinas de Property. El TPI señaló que esa fue la razón por la que se desestimó el primer pleito. Según el TPI, la Corporación demandada no pudo emplazarse en esa dirección, porque en el lugar estaba ubicada otra corporación. Véase, pág. 21 de la sentencia apelada. Además, se percató de que en el Registro de Operaciones consta que el agente residente de Property Insurance Agency, Inc. era Property Insurance Corporation. Sin embargo, en dicho registro no surge que bajo ese nombre exista o haya existido corporación alguna.

Según consta en la sentencia, Property incumplió con la Ley General de Corporaciones, porque no tenía un agente residente disponible para recibir emplazamientos y no mantuvo su dirección física disponible al público. El tribunal concluyó que el incumplimiento de la Corporación obstaculizó los intentos de los apelados de cumplir con la Regla 4.4(e) de Procedimiento Civil. Por último, hizo constar que el 16 de abril de 2016, el Departamento de Estado le revocó el certificado de incorporación, porque durante tres años consecutivos no rindió informes, ni pagó los derechos exigidos por ley.

Por otro lado, el tribunal hizo constar las gestiones realizadas y, acreditadas mediante declaración jurada por los apelados, para emplazar a Antonio Ortega Dardet y a su esposa. El 3 de noviembre de 2011, los apelados solicitaron autorización para emplazar por edictos a Property y a Antonio Dardet y su esposa. La

solicitud estuvo acompañada de una declaración jurada y seis certificaciones de las gestiones que realizaron las entidades que contrataron los apelados en la Florida para localizarlos y emplazarlos. Antes de presentar la demanda intentaron localizarles en el Edificio Bolivia 33, Calle Bolivia, Hato Rey, PR, donde ubicaban las oficinas de Property. No obstante, esas oficinas estaban cerradas y apagadas y no tenían el rótulo que las identificaba anteriormente. Previo a presentar la demanda, intentaron localizarlos en el Apartamento 2A del Condominio Kings Court en Condado, PR. Los vecinos les informaron que el apartamento se encontraba desocupado. La señora Santana, ex Vicepresidenta de Property, les informó que el Sr. Antonio Ortega Dardet tenía propiedades en Miami, Florida y les dio varias direcciones. El abogado Jorge Calves Prieto contrató un alguacil que intentó localizarles en varias direcciones ubicadas en Miami, Florida. El alguacil intentó localizar a los apelantes en la dirección 612 Gran Bay Estates Circle, Key Biscayne, FL 33149. Sin embargo, esa dirección era inexistente. Luego se personó en 600 Grand Perre Drive 5BS, Key Biscayne, Florida 33149-2703, donde contactó a la madre de los hermanos Ortega Dardet. La madre de los apelantes presuntamente le informó que desconocía el paradero de sus hijos. Además, visitó el 28 Gran Bay Estate Circle, Key Biscayne, FL 33149. No obstante, encontró que vivían otras personas que le dijeron que no conocían al Sr. Antonio Ortega Dardet ni a su esposa. El alguacil acudió a otra dirección, en la que le informaron que Antonio Ortega tenía un *time sharing*, pero no estaba allí en ese momento.

El TPI señaló que los apelados, además, presentaron tres certificaciones tituladas *Verified Return of Non Service* para detallar y evidenciar los intentos infructuosos de localizar a Antonio Ortega Dardet y a su esposa. Además, de que contrataron a la compañía

Courtesy Process Server Corp., que brinda servicios de diligenciamiento de emplazamiento en el Estado de la Florida. El emplazador de dicha compañía visitó tres de las mismas direcciones que el alguacil, y sus gestiones también fueron infructuosas. No obstante, el emplazador acudió a una quinta dirección, correspondiente a una propiedad de Teresa Amorín, pero no encontró persona alguna. Según consta en la sentencia, los apelados presentaron las certificaciones que evidencian esas diligencias.

El tribunal hizo hincapié en que no existe jurisprudencia que interprete la Regla 4.6, *supra,* sobre el alcance y significado de la suficiencia de las diligencias que el demandante debe acreditar para ser relevado de notificar al demando con posterioridad a la publicación del edicto. No obstante, determinó que la decisión del tribunal de excusar el cumplimiento de ese requisito no puede ser revisada en un pleito de nulidad de sentencia por falta de emplazamiento bajo la Regla 49.2, *supra.* El TPI concluyó que el tribunal tiene discreción para eximir al demandante de ese requisito, si le acredita que hizo esfuerzos infructuosos para localizar al demandado en el exterior y que desconoce su dirección física o postal. Según el TPI, el promovente de una reclamación de nulidad de sentencia por falta de emplazamiento debe demostrar que existe prueba extrínseca suficiente para rebatir la presunción de corrección y validez de dicha sentencia. El TPI determinó que la solicitud de nulidad de sentencia no puede estar basada exclusivamente en la información que obre en el récord y limitarse a cuestionar la discreción judicial mediante conjeturas.

Según el tribunal, los apelantes tenían que presentar evidencia suficiente para concluir razonablemente que los apelados actuaron de forma contraria a derecho. Al TPI le quedó claro que los apelantes no presentaron dicha evidencia. El TPI concluyó que

los apelantes no; 1) alegaron con especificidad el fraude al tribunal, 2) no evidenciaron que las representaciones falsas y la conducta impropia de los apelados indujeron a error al tribunal, al momento de autorizar los emplazamientos por edictos y de excusar el cumplimiento con el requisito de notificación posterior a su publicación y 3) no detallaron el incumplimiento de los apelados con la Regla 4.6, *supra*, en el que fundamentan la falta de jurisdicción sobre su persona. Por esas razones, resolvió que los apelantes no presentaron prueba preponderante extrínseca, para establecer el planteamiento de fraude al tribunal o la sugerencia en torno a la falta de jurisdicción. Según el TPI, los apelantes fallaron en señalar actuaciones específicas por parte de los apelados, que no fueron consideradas por el magistrado que autorizó los emplazamientos por edictos, o que minan el ejercicio de su discreción.

El foro primario resolvió que los apelados no tenían que acreditar los esfuerzos para emplazar a los apelantes en Puerto Rico, para ser eximidos del requisito de notificación a la última dirección conocida. El TPI concluyó que solo tenían que acreditar que los apelantes no vivían en Puerto Rico y que no pudieron obtener sus direcciones exactas, pese a los esfuerzos realizados para localizarlos en el exterior.

A juicio del TPI, los apelados excedieron las exigencias procesales, al intentar emplazar a los apelantes personalmente en la Florida, ya que presentaron las certificaciones de los diligenciamientos negativos, a pesar de que no era necesario. Según el TPI, de los anejos de la propia demanda, surgen los gastos y esfuerzos adicionales que los apelados realizaron para descubrir las direcciones de los apelantes y que resultaron incorrectos e inexistentes.

Por último, el TPI rechazó la aplicación de la jurisprudencia citada por la apelante en apoyo a su posición. El tribunal estableció diferencia en los hechos de *Lanzo Llanos v. Banco de Vivienda,* 133 DPR 507 (1993), con los de este caso. Según el TPI, en ese caso, los demandados se encontraban en Puerto Rico y, previo a autorizar el emplazamiento por edicto, era necesario que los demandantes acreditaran que realizaron diligencias razonablemente suficientes para emplazarlos personalmente. El TPI señaló que esa exigencia no es requerida cuando se conoce que los demandados están fuera de Puerto Rico. Por eso rechazó que los apelados estuvieran obligados a pedir citar a la madre de los apelantes a un examen bajo juramento para preguntarle la dirección. Al tribunal le pareció irrazonablemente oneroso, requerirle a un demandante en Puerto Rico que incurra en gastos adicionales para deponer a algún familiar de los demandados en el exterior, meramente por sospechar que alcanzaría resultados distintos. Según el TPI, nuestro ordenamiento procesal permite emplazar por edicto a los demandados fuera de Puerto Rico, sin más. El tribunal señaló que nuestro ordenamiento provee para relevar al demandante del requisito de notificación, posterior a la publicación del edicto, siempre que los esfuerzos acreditados para dar con la dirección del demandado hayan sido razonables y suficientes, a la luz de las circunstancias particulares del caso.

El TPI, además, distinguió los hechos de *Rivera v. Jaume,* 157 DPR 562 (2002), a los de este caso, porque allí el demandado alegó que no fue debidamente emplazado, que nunca recibió notificación del pleito en su contra y que desconocía la paternidad que se le imputaba. Sin embargo, señaló que aquí los apelantes conocían de la sentencia dictada contra de Property y del pleito en el que el foro apelativo resolvió que los apelados tenían que presentar una demanda independiente en su contra para solicitar

descorrer el velo corporativo. El TPI también señaló que el demandado en *Rivera v. Jaume, supra,* tenía una buena defensa en los méritos, cosa que no ocurre en este caso. Según el TPI, los apelantes no tienen una buena defensa porque no plantearon la existencia de una controversia genuina sobre los méritos de la sentencia, cuya nulidad solicitan.

No obstante, encontró que en este caso ocurrió algo similar a *Pardo v. Sucesión Stella,* 145 DPR 816 (1998), porque la demanda se limita a cuestionar, mediante conjeturas, hechos que surgen de las declaraciones juradas que los apelados presentaron hace más de una década, sin documentos ni prueba suficiente para controvertirlos. Según el TPI, los apelantes se limitaron a alegar que su madre nunca les comentó sobre la visita del alguacil de Florida y que ciertas propiedades que les pertenecían al momento de los hechos no estaban desocupadas. El tribunal señaló que los apelados no sustentaron esas alegaciones, porque su madre falleció sin declarar sobre la visita del alguacil y tampoco detallaron los nombres de las personas que ocupaban sus propiedades ni presentaron pruebas al afecto.

El 10 de septiembre de 2022, el TPI desestimó la demanda porque los apelantes no expusieron señalamientos específicos sobre el fraude al tribunal y carecen de detalles para fundamentar la falta de jurisdicción. El foro primario también consideró otros factores que abonan a la desestimación, como el tiempo desde que se dictó la sentencia y se presentó este pleito, los perjuicios de reabrir el litigio, el interés de evitar congestión y demoras y la necesidad de promover una solución justa rápida y económica y brindar finalidad a las controversias.

Los apelantes solicitaron reconsideración y los apelados presentaron su oposición. El 14 de noviembre de 2022, el TPI notificó la decisión de declarar No ha lugar la reconsideración.

Inconforme, la apelante presentó este recurso en el que señala los errores siguientes:

> ERRÓ EL TPI AL CONCLUIR QUE EL TRIBUNAL ADQUIRIÓ JURISDICCIÓN SOBRE LOS APELANTES PARA DICTAR SENTENCIA EN REBELDÍA EN SU CONTRA A PESAR DE QUE LAS DILIGENCIAS REALIZADAS POR LOS RECURRIDOS FUERON INSUFICIENTES PARA JUSTIFICAR EL EMPLAZAMIENTO POR EDICTO.

> ERRÓ EL TPI AL DESESTIMAR LA DEMANDA ENTABLADA POR LOS APELANTES A PESAR DE QUE LOS HECHOS BIEN ALEGADOS EN LA MISMA SON SUFICIENTES PARA SOSTENER UNA CAUSA DE ACCIÓN POR NULIDAD DE SENTENCIA.

## II

### MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA R. 10.2 (5)

El análisis de una moción de desestimación basada en la falta de una causa de acción que justifique la concesión de un remedio obliga a los tribunales a dar por ciertas y buenas todas las alegaciones fácticas de la demanda. *Torres Torres v. Torres et al,* 179 DPR 481, 501 (2010); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 487, 504 (1994). El demandado debe demostrar que el demandante no tiene derecho a remedio alguno, aunque la demanda se interprete de la manera más favorable para este. *Sánchez v. Aut. de los Puertos,* 153 DPR 559, 569 (2001); *Pressure Vessels PR v. Empire Gas PR, supra,* pág. 505.

La desestimación de una demanda no procede a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que pueda ser probado en apoyo a su reclamación. *El Día Inc. v. Municipio de Guaynabo,* 187 DPR 811, 820-821 (2013); *Consejo de Titulares v. Gómez Estremera et al,* 184 DPR 407, 423 (2012).

### EL EMPLAZAMIENTO POR EDICTO

El emplazamiento por edicto está regulado en la Regla 4.6 de Procedimiento Civil, 32 LPRA Ap. V. Su texto es el siguiente:

**(a) Cuando la persona a ser emplazada este fuere de Puerto Rico**, o que estando en Puerto Rico **no pudo ser localizada después de realizarse de las diligencias pertinentes, o se oculte para no ser emplazada o** si es una corporación extranjera sin agente residente, **y así se compruebe a satisfacción del tribunal mediante declaración jurada que exprese dichas diligencias y aparezca también de dicha declaración, o de la demanda presentada, que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada**, o que dicha persona es parte apropiada en el pleito, **el tribunal podrá dictar una orden para disponer que el emplazamiento se haga por un edicto**. No se requerirá un emplazamiento negativo como condición para dictar la orden que disponga que el emplazamiento se haga por edicto.

La orden dispondrá que el emplazamiento se haga una sola vez en un periódico de circulación general de la Isla de Puerto Rico. **La orden dispondrá, además, que dentro de los diez (10) días siguientes a la publicación del edicto se le dirija a la parte demandada una copia del emplazamiento y de la demanda presentada, por correo certificado con acuse de recibo** o cualquier otra forma de servicio de entrega de correspondencia con acuse de recibo, siempre y cuando dicha entidad no posea vínculo alguno con la parte demandante y no tenga interés en el pleito, **al lugar de su última dirección física o postal conocida, a no ser que se justifique mediante una declaración jurada que a pesar de los esfuerzos razonables realizados, dirigidos a encontrar una dirección física o postal de la parte demandada, con expresión de éstos, no ha sido posible localizar dirección alguna de la parte demandada, en cuyo caso el tribunal excusará el cumplimiento de esta disposición.**

En *Caribbean Orthopedics Products of Puerto Rico v. Medshape, Inc.,* 207 DPR 994, 1008-1009 (2021), el Tribunal Supremo de Puerto Rico reconoció que el demandante queda excusado de cumplir con el requisito de notificación a la última dirección conocida, siempre y cuando justifique en una declaración jurada que, a pesar de los esfuerzos realizados, no ha podido localizar dirección alguna de la demandada.

Los requisitos impuestos al emplazamiento por edicto persiguen evitar el fraude. Esta es la razón por la que se exige su más estricto cumplimiento. La parte que solicita emplazamientos por edicto tiene que acreditar que ha sido diligente en tratar de

localizar a la parte demandada con el propósito de diligenciar el emplazamiento personal. La demandante, además, debe acreditar que no ha podido localizar a la demandada, a pesar de las diligencias realizadas. El emplazador deberá prestar una declaración jurada con detalles de las gestiones realizadas para localizar al demandado. El tribunal solo puede autorizar los emplazamientos por edicto, cuando el demandante demuestra fehacientemente que ha llevado a cabo diligencias potencialmente efectivas para encontrar al demandado. *Lanzo Llanos v Banco de la Vivienda, supra*, pág. 512.

La declaración jurada que le sirve de base tiene que demostrar con hechos específicos que el demandante ha realizado gestiones encaminadas en forma eficaz para localizar al demandado y emplazarlo personalmente y que, a pesar de esa diligencia, ha sido imposible localizarlo. La razonabilidad de las gestiones efectuadas dependerá de las circunstancias particulares de cada caso y la suficiencia de las diligencias se medirá a base de todos los recursos que el demandante tiene razonablemente accesibles para intentar localizar al demandado. Tal determinación deberá estar basada en examinar, si a la luz de las circunstancias particulares del caso, el demandante agotó todas las posibilidades que tenía razonablemente disponibles para localizar al demandado y emplazarlo personalmente. *Lanzo Llanos v. Banco de la Vivienda,* supra, págs. 513-514.

En *Rivera v. Jaume, supra,* el Tribunal Supremo de Puerto Rico interpretó la entonces vigente Regla 4.5 de Procedimiento Civil sobre emplazamientos por edicto. Allí el tribunal resolvió que:

> En los casos en los que el demandado se encuentre fuera de Puerto Rico y la parte demandante **ignora la dirección del demandado fuera de Puerto Rico se exige prueba de las diligencias específicas para localizar al demandado antes de expedir el emplazamiento por edicto y relevar al demandante del envío por correo de los documentos**

> **pertinentes**. Por el contrario, cuando el demandado se encuentra fuera de Puerto Rico y al demandante le consta el lugar específico donde este se encuentra y así lo informa al tribunal, no se requiere la comprobación de las diligencias vigorosas y honesto esfuerzo para citarle personalmente y es compulsorio el envío por correo certificado con acuse de recibo de la copia de la demanda, la orden para emplazar mediante edicto y el edicto mismo.
>
> En estas circunstancias, la citada Regla 4.5 de Procedimiento Civil exige que dichos documentos sean enviados al lugar de la última residencia conocida del demandado. El significado y alcance de este requisito fue interpretado por este tribunal en *Rodríguez v. Nasrallah,* 118 DPR 98 (1986). El criterio adoptado por este tribunal es a los efectos de que cumple con el requisito de notificación al lugar de la última residencia conocida del demandado si dicha notificación se envió a una dirección que esté razonablemente calculada, dentro de las circunstancias particulares del caso, para darle aviso a la parte contraria de la reclamación que se ha presentado en su contra.

*Rivera v. Jaume, supra,* págs. 575-577.

Del texto de la Regla 4.5, *supra,* y su jurisprudencia interpretativa surge que la notificación tiene que dirigirse al lugar, ciudad, estado o país donde el demandante haya ubicado la última residencia del demandado conocida. La notificación tiene que tener una posibilidad razonable de informar al demandado de la reclamación en su contra, de acuerdo a las circunstancias particulares del caso. La dirección a la que se envía la notificación puede enviarse a la dirección postal dentro del último lugar de residencia conocido del demandado, siempre que se pruebe, a satisfacción del tribunal, que el envío a esa dirección informará razonablemente al demandado de la reclamación en su contra. *Rivera v. Jaume, supra,* pág. 578. Cuando la dirección ofrecida en la declaración jurada para autorizar el emplazamiento mediante edicto ya no es la dirección del demandado, se requiere que el demandante demuestre que realizó un esfuerzo razonable para encontrar una dirección correcta donde enviar la notificación. *Rivera v. Jaume, supra,* pág. 580.

**Comentarios del Dr. José A. Cuevas Segarra sobre la Regla 4.6**

El Lcdo. Cuevas Segarra señala que los requisitos más importantes del emplazamiento por edicto son los siguientes:

1) La declaración jurada inicial donde se disponen las diligencias efectuadas para localizar a la persona a ser emplazada;

2) que se le envíe al demandado por correo certificado a su última dirección conocida, dentro de los 10 días luego de expedida la Orden para que se emplace por edictos, copia de la demanda y del emplazamiento y;

3) el diligenciamiento dentro de los ciento veinte días luego de ser expedido.

Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., USA, Publicaciones JTS, 2011, T. I, pág. 354.

Sostiene el tratadista, que la regla citada establece las circunstancias en las que los tribunales pueden autorizar un emplazamiento por edicto. Según lo dispuesto, previo a autorizar la publicación del edicto, el juez tiene que haber comprobado a su satisfacción, las diligencias efectuadas por el demandante para lograr el emplazamiento personal. El demandante tiene que comprobar dichas diligencias mediante una declaración jurada suficiente en derecho. La declaración jurada tiene que incluir hechos específicos de las gestiones efectivas realizadas para localizar al demandado y si se ha agotado toda posibilidad razonable disponible al demandante para localizarlo. No obstante, la declaración jurada no debe estar basada en conclusiones o en generalidades. Dicha declaración es parte integral del procedimiento. El tribunal no adquiere jurisdicción si la declaración presentada es insuficiente para inspirar el convencimiento judicial. Se trata de un requisito de cumplimiento estricto que incide de manera fatal sobre la jurisdicción. Su omisión no puede subsanarse, mediante la presentación de una declaración jurada con posterioridad al emplazamiento requerido. Estos comentarios están basados en lo resuelto por el Tribunal

Supremo de Puerto Rico en *Global Gas Inc. v. Shalaam Realty Corp.,* 164 DPR 474 (2005); *Márquez Resto v. Barreto Lima,* 143 DPR 137 (1997), bajo la vigencia de la Regla 4.5 de 1979, que en las Reglas del 2009 es la Regla 4.6. Véase, Cuevas Segarra, Op. cit., págs. 353 y 355.

El tratadista señala el emplazamiento por edicto como el método a usar, **cuando la persona a ser emplazada se hallare fuera de Puerto Rico.** Cuevas Segarra, Op. cit., pág. 354. Nos explica que la Regla 4.6, *supra,* **exige la comprobación de las diligencias vigorosas realizadas por el demandante y su esfuerzo honesto para citar personalmente a un demandado que está fuera de Puerto Rico y que se ignora su dirección o paradero.** Sin embargo, esta exigencia no aplica, cuando el demandante tiene constancia del lugar determinado fuera de Puerto Rico que está el demandado y lo informa al tribunal. Cuando el demandante ignora la dirección del demandado fuera de Puerto Rico, las diligencias para localizarlo personalmente **no pueden ser practicadas por la parte, su abogado o persona con interés en el pleito.** En tal caso, la declaración jurada sobre las diligencias realizadas para emplazar personalmente al demandado es insuficiente. Cuevas Segarra, Op. cit., pág. 356. Los comentarios están basados en lo resuelto en *Pagán v. Rivera,* 113 DPR 750 (1983).

De acuerdo con Cuevas Segarra, la declaración jurada debe expresar las personas con quienes investigó el paradero del demandado y sus direcciones. Además, debe incluir las gestiones realizadas con las autoridades de la comunidad, la policía, el alcalde, el administrador, porque son las personas llamadas a conocer la residencia o paradero de quienes viven en la comunidad. Una declaración jurada insuficiente, impide que el tribunal adquiera jurisdicción. **No obstante, la razonabilidad de**

**las gestiones efectuadas dependerá de las circunstancias particulares de cada caso, que el juez corrobora a su satisfacción antes de autorizar los emplazamientos por edicto.** Cuevas Segarra, Op. cit., págs. 356-357. Estos comentarios están basados en las decisiones de *Banco Popular v. Negrón Barbosa,* 154 DPR 249 (2005) y *Lanzo Llanos v. Banco de la Vivienda, supra.*

## RELEVO DE SENTENCIA

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, establece el mecanismo procesal y los fundamentos para solicitar el relevo de los efectos de una sentencia. Dicha regla provee un mecanismo post sentencia para impedir que los tecnicismos y sofisticaciones frustren los fines de la justicia. *García Colón et al v. Sucn. González,* 178 DPR 527, 539 (2010). El remedio provisto permite al tribunal hacer un balance entre dos intereses en conflicto. Por un lado, está el interés de que toda litigación concluya y tenga finalidad. Por otra parte, está el interés de que en todo caso se haga justicia. Los tribunales tienen discreción para conceder o no el relevo de una sentencia, independientemente de que existan alguno de los fundamentos de la Regla 49.2, *supra. Náter v. Ramos,* 162 DPR 616, 624 (2004).

El texto de la Regla 49.2, *supra*, dispone lo siguiente:

Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o su representante legal de una sentencia, orden o procedimiento por las razones siguientes:

[...]

(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de la una parte adversa;

(d) nulidad de sentencia;

[...]

...La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la

sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta regla no afectará la finalidad de una sentencia, ni suspenderá sus efectos. Esta Regla no limita el poder del tribunal para:

**(1) Conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento;**

**(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y**

**(3) dejar sin efecto una sentencia por motivo de fraude al tribunal.**

El peticionario de una moción de relevo de sentencia está obligado a justificar su solicitud, amparándose en una de las causales establecida en la Regla 49.2, *supra*. Esta regla debe interpretarse liberalmente. No obstante, no es una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración. Tampoco está disponible para alegar cuestiones sustantivas que debieron plantearse mediante reconsideración o apelación. *García Colón et al v. Sucn. González, supra,* págs. 540-541.

Al examinar una solicitud de relevo de sentencia bajo la Regla 49.2, *supra,* el juez deberá estar atento a la existencia de una defensa valida que oponer a la reclamación del peticionario, el tiempo que media entre la sentencia y la solicitud de relevo, el perjuicio que sufriría la parte contraria si se concede el relevo de sentencia y el perjuicio que sufriría la promovente de no ser concedido el remedio solicitado. *Pardo v. Sucn. Stella, supra*, pág. 825.

La Regla 49.2, *supra,* faculta a los tribunales a relevar a una parte de los efectos de una sentencia, cuando se determina su nulidad. Una sentencia es nula cuando se dictó sin jurisdicción o cuando se quebró el debido proceso de ley. Cuando la sentencia es nula, no hay margen para la discreción y tiene que ser dejada sin efecto, independientemente de los méritos de la defensa o

reclamación del perjudicado. Una sentencia nula tampoco está sujeta al término de seis (6) meses establecidos en la Regla 49.2, *supra. García Colón et al v. Sucn. González, supra,* págs. 543-544.

**La propia regla dispone que el tribunal puede conocer un pleito independiente transcurrido el término de seis (6) meses, cuando el promovente plantea la nulidad de una sentencia.** *Rivera v. Jaume, supra,* pág. 573; *Banco Santander v. Fajardo Farms Corp.,* 141 DPR 237, 247 (1996). El pleito independiente de nulidad puede presentarse en casos en los que una parte no hubiese sido emplazada, por fraude al tribunal, la sentencia se dictó sin jurisdicción sobre la materia o las partes, el tribunal actuó de forma contraria al debido proceso de ley. *Rivera v. Jaume,* supra, págs. 573-574.

Una acción independiente de nulidad de sentencia basada en fraude al tribunal solo incluye actuaciones cuyo efecto o intención sea mancillar al tribunal como tal, o que es perpetuado por oficiales del tribunal, de tal forma que la maquinaria judicial no puede ejercer su acostumbrada imparcialidad al momento de juzgar los casos presentados para adjudicación. Las alegaciones falsas que se hayan incluido en una demanda per se no constituyen fundamentos para concluir que hubo fraude al tribunal. La acción independiente sobre fraude al tribunal tiene que exponer detalladamente las circunstancias que lo constituyen. El solo hecho de alegar que hubo fraude, no constituye una de las circunstancias que a tenor de la Regla 49.2, *supra,* permiten el relevo de una sentencia. *Pardo v. Sucn. Stella, supra,* págs. 824-825.

Algunos ejemplos de fraude al tribunal son los siguientes: el perpetrado por oficiales del tribunal, la preparación, el uso y presentación en la vista de prueba falsa obtenida por la parte adversa por medio de soborno y la instigación al perjurio, o que

nunca se emplazó debidamente a la parte contra la cual se dictó sentencia. *Pardo v. Sucn. Stella, supra,* pág. 829.

**III**

Los apelantes alegan que el TPI erró al desestimar la demanda de nulidad de sentencia. La controversia se reduce a determinar si la sentencia en la que el tribunal descorrió el velo corporativo es nula. Los apelantes solicitan la nulidad por dos razones. Según los apelantes, la sentencia fue obtenida mediante fraude al tribunal, porque los apelados sabían dónde emplazarlos. No obstante, le hicieron creer al tribunal que desconocían su dirección y que les fue imposible emplazarlos. Además, alegan que el tribunal dictó la sentencia, sin tener jurisdicción sobre su persona, porque no fueron emplazados conforme a derecho.

Las alegaciones de fraude de la demanda son las siguientes:

**II. Fraude**

118. Los Demandantes por la presente repiten e incorporan por referencia las alegaciones de los párrafos anteriores.

119. Una acción por fraude al tribunal procede: "[contra] aquellos tipos de fraude cuya intención sea mancillar al tribunal como tal, por ejemplo, el perpetrado por oficiales del tribunal, la preparación, el uso y la presentación en la vista del caso de prueba falsa obtenida por la parte adversa por medio del soborno y la instigación al perjurio, *o que nunca se emplazó debidamente a la parte contra la cual se dictó la sentencia*". Pardo v. Sucn. Stella, 145 DPR 816, 829 (1998). (énfasis suplido).

120. Específicamente, el tipo de fraude que se alega en esta demanda es el fraude por falta de emplazamiento y el fraude al Tribunal.

121. Como se puede observar a simple vista, resulta altamente sospechoso que la dirección utilizada por los Demandados la dirección real de Antonio Ortega Dardet y la Sra. Amorín es una mezcla de distintos elementos de varias direcciones reales.

122. En síntesis, todas las actuaciones de los Demandados, sus omisiones de contactar a personas cruciales como las abogadas de los Demandantes, las direcciones "erróneas", las supuestas diligencias incompletas, la inclusión de alguien a quien ya tenían

conocimiento no procedía demandar (la Sra. Dibildox), deben ser vistas todas en conjunto.

123. Al considerar todo el proceso lleno de irregularidades, omisiones y errores convenientes por parte de los Demandados es forzoso concluir que, en el mejor de los casos, los Rivera v. Jaume, 157 D.P.R. a las págs. 582-83 ("Ante el foro de instancia se presentó evidencia, provista por la propia señora Jaume, de que el señor Rivera no recibió la notificación de la demanda y del emplazamiento, ya que el sobre donde se incluyeron dichos documentos no fue reclamado por éste. El tribunal, ignorando el hecho esencial de que la correspondencia referida fue devuelta por el correo, se conformó con constatar que la demandante había cumplido con los requisitos formales del emplazamiento mediante edictos, y dictó sentencia en rebeldía contra el demandado. Consideramos que el foro de instancia erró al así proceder. En aras de salvaguardar el debido procedimiento de ley del señor Rivera, el tribunal debió, cuando menos, inquirir sobre si efectivamente la señora Jaume conocía y estaba segura, en su mejor conocimiento, de que la dirección que le proveyó al tribunal pertenecía o alguna vez perteneció al demandado. El tribunal no debió conformarse con darle entero crédito a la información provista por la señora Jaume cuando tenía de frente evidencia que, como cuestión de realidad, sembraba dudas sobre si la dirección utilizada por la demandante para enviar la notificación de la demanda y del emplazamiento efectivamente era la dirección del señor Rivera"). Demandados pretendían emplazar a los Demandantes mediante un proceso desarticulado con diligencias completadas a medias.

124. En el peor de los casos, estamos ante una táctica calculada e intencional por parte de los Demandados donde pretendían fraudulentamente obtener una sentencia en rebeldía contra los Demandantes, para luego sorprenderlos con una sentencia final y firme donde estos no tuviesen la oportunidad de defenderse y rebatir sus argumentos.

125. Es importante recordar la actuación de los Demandados en el caso original. Allí, estos demandaron a Property y luego, mediante el proceso de ejecución, pretendían descorrer el velo corporativo y cobrar de los Demandantes, sin haber litigado estos asuntos durante el juicio.

En otras palabras, *pretendían reclamarle a los Demandantes (no a Property) luego de tener una sentencia para no darles la oportunidad de defenderse.*

126. Este precisamente fue el esquema y "estrategia de litigio" de los Demandados en el segundo caso.

127. Como se desprende de lo antes expuesto, los Demandados engañaron a este Honorable Tribunal para obtener una sentencia contra los Demandantes.

128. Los Demandados ocultaron el pleito del 2010 el cual envolvía las mismas controversias del segundo caso para ejecutar la sentencia contra los Demandantes y que ese caso fue desestimado por falta de emplazamiento.

129. En ese caso, ni Property Insurance Corp. ni los Demandantes en su carácter personal fueron emplazados razón por la cual el Tribunal desestimó. Dicho hecho expone la táctica fraudulenta de los Demandados en demandar y no emplazar conforme al ordenamiento jurídico.

130. Luego, *ocho años* más tarde, los Demandados radican otro pleito en Florida para cobrarle a los Demandantes cientos de miles de dólares en virtud de una sentencia de un caso del cual nunca se habían enterado de su existencia pues no habían sido emplazados.

131. Los Demandantes no tuvieron conocimiento del segundo caso hasta el momento en que Antonio Ortega Dardet y la Sra. Amorín reciben un emplazamiento del caso en Florida intentando ejecutar contra ellos la sentencia emitida por este Honorable Tribunal el 7 de diciembre de 2012. **Véase Exhibit H.**

132. Las actuaciones de los Demandados demuestran un patente menosprecio por el Debido Proceso de Ley de los Demandantes y, a lo sumo, un esfuerzo concertado para defraudar a este Honorable Tribunal.

133. Las diligencias para emplazar certificadas por los Demandados son insuficientes a la luz de Lanzo Llanos, Rivera v. Jaume, y la jurisprudencia interpretativa de las Reglas de Procedimiento Civil de Puerto Rico.

134. Una sentencia es nula "cuando se ha dictado sin jurisdicción o cuando al dictarla *se ha quebrantado el debido proceso de ley*". García Colón v. Sucn. González, 178 DPR 527, 543 (2010). Asimismo, el "relevar a una parte de los efectos de una sentencia es una decisión discrecional, *salvo en los casos de nulidad* o cuando la sentencia ha sido satisfecha". Id. en la pág. 541 (énfasis suplido). Presentada una solicitud de relevo de sentencia la misma "debe 'interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía o una sentencia, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos'". Id. (citando a Diaz v. Tribunal Superior, 93 DPR 79, 87 (1966)).

135. Ordinariamente, según la Regla 49.2 de Procedimiento Civil, si la parte con interés de que se le releve del cumplimiento con una sentencia lo hace dentro de los seis (6) meses de emitida la misma, debe hacerse por moción al mismo tribunal que la emitió y en el mismo caso.

136. No obstante, según la propia regla, cuando se trate de que la misma se deje sin efecto por la solicitud de nulidad, o por motivo de fraude al tribunal, no hay término prescriptivo para hacerlo y la jurisprudencia establece que puede realizarse mediante una causa de acción independiente. Bco. Santander P.R. v. Fajardo Farms Corp., 141 DPR 237, 244 (1996) ("Es decir, si el tribunal nunca adquirió jurisdicción sobre la persona del demandado, el dictamen emitido es nulo y no está sujeto al plazo extintivo de seis (6) meses dispuesto en la Regla 49.2 de Procedimiento Civil, *supra*, para la presentación de la moción de relevo de sentencia").

137. Por ende, la sentencia dictada por este Tribunal el 7 de diciembre de 2012 es nula y, en consideración a los hechos particulares de este caso, el derecho aplicable y la política pública frecuentemente esbozada por nuestro más alto foro de que los casos se resuelvan en sus méritos procede relevar a los Demandantes de la sentencia obtenida en violación a su derecho a un Debido Proceso de Ley.

Una simple lectura de las alegaciones de la demanda transcritas hace evidente que los apelantes no tienen una causa de acción por fraude que justifique declarar la nulidad de la sentencia en rebeldía en su contra. Aun dándolas como ciertas son insuficientes para establecer el fraude. La demanda carece de alegaciones con hechos específicos de lo que constituye el fraude alegado. Las alegaciones número 120, 121, 122, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133 y 137 son meras conclusiones que no están basadas en hechos específicos que establezcan fraude al tribunal. Otras de las alegaciones son simplemente conclusiones de derecho. Nos referimos a las alegaciones número 119, 123, 134, 135 y 136.

La demanda carece de alegaciones específicas que nos permitan concluir que los apelados cometieron fraude y que ese fraude impidió que el tribunal ejerciera imparcialmente su función adjudicativa. Los apelantes no cumplieron con la obligación de detallar ni especificar en qué consistió el alegado fraude al tribunal. La demanda esta huérfana de alegaciones, de hechos específicos, de los cuales pueda establecerse el fraude con certeza razonable.

Por otro lado, los apelantes alegan que la sentencia en la que el tribunal ordenó descorrer el velo corporativo es nula. Según los apelantes, el tribunal nunca adquirió jurisdicción sobre sus personas, porque no fueron emplazados conforme a derecho. Sostienen que las declaraciones juradas que presentaron los apelados eran insuficientes para justificar los emplazamientos por edicto y eximirlos de la notificación posterior su publicación.

Los apelados acompañaron la solicitud para emplazar por edicto a los apelantes Francisco Ortega Dardet, su esposa y la sociedad de gananciales con la declaración jurada de Patricio Estévez León sobre las gestiones realizadas para emplazarlos personalmente que resultaron infructuosas. Véase, pág. 165 del apéndice. Además, presentaron otra declaración jurada, en la que Patricio Estévez hizo constar las gestiones realizadas para emplazar personalmente a Antonio Ortega Dardet, su esposa y la sociedad de gananciales. Véase, pág. 365 del apéndice. Ambas declaraciones juradas cumplen con las exigencias de la Regla 4.6, *supra.*

La aplicación de la Regla 4.6, *supra,* es incuestionable debido a que los demandados están fuera de Puerto Rico. Todos los requisitos de la Regla 4.6, *supra,* se cumplen, porque los demandantes presentaron una declaración jurada con las diligencias realizadas para emplazar a los demandados y de la que surge la existencia de una causa de acción que justifica la concesión de un remedio. El tribunal comprobó y quedó satisfecho con las diligencias expresadas en la declaración jurada, para emplazar personalmente a los demandados y sobre la existencia de una causa de acción.

Los apelantes alegan que los apelados y sus abogados **fueron quienes realizaron las diligencias para emplazarlos, a pesar de que la Regla 4.6, *supra,*** prohíbe que las diligencias para

localizar a los demandados sean realizadas por la parte, su abogado o persona con interés en el pleito. No obstante, parten de una premisa incorrecta porque en ambas declaraciones juradas consta que las diligencias fueron realizadas por un alguacil del estado de la Florida.

Las declaraciones juradas presentadas en apoyo a la solicitud de emplazamientos por edictos **evidencian que los apelados tienen una causa de acción contra los apelantes.** Según consta en ambas declaraciones juradas, la demanda se presentó para cobrar las acreencias adjudicadas a favor de los apelados, mediante la sentencia final y firme emitida en el caso K AC200601798.

Las insuficiencias alegadas por los apelantes no existen. **Los apelantes alegan que las declaraciones juradas no incluyen nombres específicos de las personas a las que se le preguntó la dirección de los apelantes**. No obstante, en ambas declaraciones juradas consta que los apelados hicieron gestiones con la señora Sra. Rosadel Santana, Ex vicepresidenta de la codemandada Property Insurance Corp. y con la propia madre de los apelantes, Maria Luisa Dardet. Además, constan en las declaraciones juradas las direcciones específicas, las que se intentó localizar a los apelantes.

Los planteamientos de que las declaraciones juradas no **incluyen hechos específicos sobre las gestiones realizadas para localizarlos carecen de mérito**.

El contenido de las declaraciones juradas evidencia **que los apelados realizaron esfuerzos razonables suficientes para localizar a los apelantes, conforme a las circunstancias particulares de este caso.**

Surge de la declaración jurada en apoyo a la solicitud para emplazar por edictos a Francisco Ortega Dardet y a su esposa, que

los apelados intentaron localizarlos incluso antes de presentar la demanda. Los apelados intentaron localizarlos en el Apartamento 8B del Condominio Victoria Plaza, Calle Cándida #10 en el Condado, previo a presentar la demanda. No obstante, los vecinos le informaron que la propiedad estaba desocupada. Igualmente consta que hicieron contacto con diferentes personas en Puerto Rico que conocían a los apelantes, a través de las que se tuvo conocimiento que tenían propiedades en Miami. El señor Patricio Estévez León especificó que la señora Rosa del Santana, ex vicepresidenta de Property Insurance, fue una de las personas que les informó que los apelantes tenían propiedades en Miami, Florida. Sin embargo, no les proveyó la dirección exacta. Los apelados contrataron unos abogados en la Florida para localizar a los apelantes en ese estado. La direcciones y números telefónicos de ambos constan en la declaración jurada. Estos abogados contrataron a un alguacil en la Florida para hacer las gestiones de localizar a los apelantes. El alguacil contactó a la madre de los apelantes y le confirmó que la propiedad pertenecía a su hijo, Francisco Ortega Dardet, pero él residía en México. Sin embargo, no pudo decirle dónde localizarlos. Otros conocidos de los apelantes le confirmaron que Francisco Ortega Dardet residía en Mexico y viajaba ocasionalmente a Estados Unidos. Aunque le informaron que residían en la Colonia Cuauhtémoc, no pudieron darle más información.

La declaración jurada sobre las gestiones realizadas para emplazar personalmente a Antonio Ortega Dardet, su esposa y la sociedad de gananciales, también incluye un recuento de hechos específicos. Según consta en dicha declaración, antes de presentar la demanda intentaron localizarlo en el Edificio Bolivia 33, Calle Bolivia, Hato Rey, Puerto Rico, donde ubicaban las oficinas de Property. No obstante, esas oficinas estaban cerradas y apagadas y

no tenían el rótulo que las identificaba anteriormente. Previo a presentar la demanda, también intentaron localizarlos en el Apartamento 2 A del Condominio Kings Court en Condado, PR. Los vecinos les informaron que el apartamento se encontraba desocupado. La señora Santana, ex Vicepresidente de Property, les informó que el Sr. Antonio Ortega Dardet tenía propiedades en Miami, Florida y les dio varias direcciones. Los apelados contrataron al abogado Jorge Calves Prieto en el Estado de la Florida para localizar al apelado. El Lcdo. Calves contrató un alguacil que intentó localizarles en varias direcciones ubicadas en Miami, Florida. El alguacil intentó localizar a los apelantes en la dirección, 612 Gran Bay Estates Circle, Key Biscayne, FL 33149, pero esa dirección era inexistente. Luego se personó en 600 Grand Perre Drive 5BS, Key Biscayne, Florida 33149-2703, donde contactó a la madre de los hermanos Ortega Dardet. Sin embargo, la madre de los apelantes les informó que desconocía el paradero de sus hijos. Además, visitó el 28 Gran Bay Estate Circle, Key Biscayne, FL 33149, pero encontró que vivían otras personas que le dijeron que no conocían al Sr. Antonio Ortega Dandet ni a su esposa. El alguacil acudió a otra dirección, en la que le informaron que Antonio Ortega tenía un *time sharing*, pero no estaba allí en ese momento.

Además, consta en la sentencia del TPI, que los apelados presentaron tres certificaciones tituladas *Verified Return of Non Service*, en las que detallaron y evidenciaron los intentos infructuosos de localizar a Antonio Ortega Dardet y a su esposa. El tribunal hizo constar que los apelados contrataron a la compañía Courtesy Process Server Corp., que brinda servicios de diligenciamiento de emplazamiento en el Estado de la Florida. El emplazador de dicha compañía visitó las tres direcciones a las que acudió el alguacil y sus gestiones también fueron infructuosas. No

obstante, también visitó otra dirección, correspondiente a una propiedad de Teresa Amorín, pero no encontró persona alguna.

Los apelantes alegan que el tribunal eximió incorrectamente a los demandantes de cumplir con el requisito de notificación con copia de la demanda y de los emplazamientos por edicto a la última dirección conocida de los demandados. Su planteamiento es incorrecto. El tribunal excusó a los apelados de notificar a los apelantes a su última dirección conocida, porque quedó convencido de que les fue imposible localizarlos. La decisión es cónsona con la Regla 4.6, s*upra,* que exime de ese requisito, cuando el contenido de la declaración jurada convence al tribunal de que el demandante hizo esfuerzos razonables para encontrar la dirección física o postal de los demandados y resultaron infructuosos.

No existe cabida en este pleito para una reclamación de nulidad de sentencia por falta de jurisdicción sobre la persona de los apelantes. Los apelantes no presentaron ninguna evidencia que contradiga el contenido de las declaraciones juradas en apoyo a la solicitud de emplazamientos por edictos. No encontramos ninguna evidencia que nos haga pensar que los apelados engañaron e indujeron a error al tribunal para que ordenara los emplazamientos por edicto y los eximiera de la notificación posterior al edicto.

Los apelados demostraron mediante declaraciones juradas que hicieron el máximo, honesto y vigoroso esfuerzo para intentar emplazar personalmente a todos los apelantes y que todas las gestiones resultaron infructuosas. Al igual que el TPI, dichas exigencias nos parecen más que razonables, a la luz de las circunstancias particulares de este caso.

**IV**

Por los fundamentos antes expuestos, se confirma la sentencia apelada en la que el TPI desestimó la demanda de nulidad de sentencia.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones